118 So.2d 17 (1960)
James A. DODD, Attorney at Law, Petitioner,
v.
THE FLORIDA BAR, Respondent.
Supreme Court of Florida.
February 3, 1960.
Rehearing Denied March 7, 1960.
*18 Richard H. Hunt, Miami, for appellant.
Marshall R. Cassedy, Tallahassee, for appellee.
PER CURIAM.
James A. Dodd, an attorney, has petitioned this Court to review a judgment of disbarment entered by the Circuit Court of Dade County.
Petitioner's principal contention before us is that the "highly suspect, conflicting evidence" presented by the State Attorney does not prove the charges made against him by a clear preponderance and therefore does not warrant his permanent and total disbarment from the practice of law.
In the motion to disbar, filed by the State Attorney pursuant to an order of a circuit judge so directing, petitioner was charged with having urged and advised several persons, including his clients, to give false testimony in two personal injury actions in the Circuit Court of Dade County, in which actions petitioner represented the plaintiffs. The two cases mentioned in the motion to disbar are hereinafter referred to as the Barton and Cass cases.
At the trial the evidence failed to sustain the charges as to the Cass case and the State Attorney announced the State's abandonment of the charge as it pertained to that case. Evidence was presented as to the actions of petitioner in the Barton case, and in addition thereto, over objection of petitioner, the trial judge allowed the testimony of a Mrs. Nautness as to actions of petitioner in a case in which petitioner had represented her. The motion to disbar did not charge petitioner with any misconduct in the Nautness case. When Mrs. Nautness began her testimony as a witness for the State, petitioner objected and the trial judge stated that the testimony would be admitted in rebuttal of petitioner's "testimony to the contrary".
In addition to his principal contention before us petitioner argues that it was error to admit the testimony of Mrs. Nautness.
We agree with petitioner that the last mentioned testimony should not have been admitted.
Nevertheless, on careful review of the evidence we find that there is sufficient evidence to establish a clear preponderance of guilt of misconduct of the petitioner in the Barton case.
The punishment awarded petitioner for his misconduct in the order under review is disbarment. Petitioner argues that this is too severe under the facts of this case.
Petitioner points out that this is his first infraction of the ethics of his profession, that he has already been punished and discredited through wide publication of the unfortunate facts of this case, and that he has already closed his law office. Attention is called to a citation he received during the last war for bravery, and that as a result of his courage he suffered injuries to the extent that he is now 70% disabled. In view of these facts and circumstances petitioner argues that disbarment is too severe a penalty.
In opposition to this plea there are the express findings of the able trial judge who after hearing the evidence and observing the witnesses, including petitioner, said in his order of disbarment:
"This is not merely a case in which a defendant has enlarged upon or exaggerated items claimed while negotiating with an adversary. This is a case in which the evidence is uncontradicted *19 that certain substantial items in several instances have been asserted by defendant, although he then knew that such items did not in fact exist. * * It is incredible under the circumstances outlined in the record that defendant's clients and office personnel could have, on a number of occasions, fabricated claims without the approval or direction of the defendant.
"Our Supreme Court has held that disbarment should be resorted to only in cases where the lawyer demonstrates an attitude or course of conduct wholly inconsistent with approved professional standards. There has been such a demonstration of persistence in unprofessional conduct in this case and it would be contrary to the public interest to allow the defendant to continue as a member of the bar. The court has no alternative but to order disbarment."
On the facts of this case we cannot say that disbarment is too severe punishment.
The primary function of trial court proceedings is to find the truth, i.e., the true facts, in disputes between man and his neighbor and man and his government, in order that the applicable law may be applied thereto so as to reach a just conclusion. In our system the courts are almost wholly dependent on members of the bar to marshal and present the true facts of each cause in such manner as to enable the judge or jury to cook the adversary contentions in a crucible and draw off the material, decisive facts to which the law may be applied.
When an attorney adds or allows false testimony to be cast into the crucible from which the truth is to be refined and taken to be weighed on the scales of justice, he makes impure the product and makes it impossible for the scales to balance.
No breach of professional ethics, or of the law, is more harmful to the administration of justice or more hurtful to the public appraisal of the legal profession than the knowledgeable use by an attorney of false testimony in the judicial process. When it is done it deserves the harshest penalty.
We must point out that in circumstances such as found to exist here the witness or the party litigant who testifies falsely is no less guilty of misconduct than the lawyer. All persons are charged with equal regard for the truth. An honest layman will seldom if ever perform a dishonest act at the urging of his lawyer and even if he does he must be held accountable therefor.
If all responsibility for the false acts of the witness or client is allowed to be shifted to the attorney the result will be to encourage, not discourage, false testimony. Further, it is likely to increase the number of situations in which a witness or litigant, when charged with having given false testimony, seeks to shift the responsibility for his acts to his attorney by claiming that the attorney advised him to testify falsely.
The order of disbarment is affirmed.
HOBSON, THORNAL and O'CONNELL, JJ., concur.
TERRELL and DREW, JJ., concur specially.
THOMAS, C.J., dissents because of the opinion that the judgment is too severe.
ROBERTS, J., dissents and concurs with THOMAS, C.J.
TERRELL, Justice (concurring).
The chancellor disbarred petitioner because "substantial items in several instances have been asserted by defendant, although he then knew that such items did not then exist." Stated in down-to-earth parlance, petitioner was charged with, and the evidence shows, that in the litigation of a case or cases he asserted claims for expense items amounting to hundreds of dollars that were never incurred, that he knew at the *20 time they were not incurred and not only that, he attempted to get his clients to assert said claims as part of the expense of the litigation.
Such fabrications are directly in the teeth of the oath that petitioner took when he was admitted to the bar; they are also contrary to the Code of Ethics, 31 F.S.A., by which every lawyer is expected to guide his professional conduct.
In the oath petitioner took when he was admitted to practice law he swore (1) "To maintain the respect due to courts of justice and judicial officers," (2) he also swore to "employ such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law." How can a lawyer incur or enlarge the respect due courts of justice by fabricating expense accounts that had no foundation in fact? No course of conduct can be more unprofessional than attempts to deceive the court by artifice or false statement of fact.
So much for violation of his oath of office. Now let us examine petitioner's violation of the Code of Ethics. In rendering service to litigants every lawyer is a minister of justice and "advances the honor of his profession and the best interest of his client when he renders service or gives advice tending to impress upon the client and his undertaking exact compliance with the strictest principles of the moral law." If he fails in this, "he merits stern and just condemnation." The conduct of every lawyer "before the court should be characterized by candor and fairness." It is "unprofessional and dishonorable to deal other than candidly with the facts in taking the statements of witnesses, in drawing affidavits and other documents, and in the prosecution of causes." "Counsel upon the trial of a cause in which perjury has been committed owes it to his profession and to the public to bring the matter to the knowledge of the prosecuting authorities." A lawyer "should strive at all times to uphold the honor and to maintain the dignity of the profession and to improve not only the law but the administration of justice." He "will find his highest honor in a deserved reputation for fidelity to private trust and to public duty, as an honest man and as a loyal and patriotic citizen."
What becomes of the "strictest principles of the moral law" when a lawyer induces or urges his client to assert expense claims in a litigated cause when no such accounts were incurred? What becomes of candor under such circumstances? Certainly no conduct on the part of a lawyer could be more unprofessional or dishonorable as a lawyer than suggesting to a client the padding of expense accounts for litigation by making claims that were never incurred. What becomes of the injunction to uphold the honor, maintain the dignity of the profession and improve the administration of justice when a lawyer indulges such conduct as petitioner is shown to have indulged.
The Code of Ethics does not pretend to catalogue the complete list of precepts governing a lawyer's professional conduct. It includes minimum precepts only. I have listed here only those which petitioner is shown to have knowingly violated. Such violations prompted the chancellor to hold that "there has been such a demonstration of persistence in unprofessional conduct in this case and it would be contrary to the public interest to allow the defendant to continue as a member of the Bar."
This and other courts have many times called attention to the fact that one practices law by grace and not by right, that the practice of law is affected with a public interest and that the privilege to practice may be withdrawn from one when wilful disregard of the honor of the profession is shown. It is common knowledge that many lawyers personally enjoy public esteem and confidence, but as a profession the public is skeptical of us and we do not enjoy the measure of public confidence we should. Ample proof of this can be demonstrated by our own records. Since our bar was integrated this court has reviewed, or is now *21 reviewing, fifty-six petitions charging lawyers with unprofessional conduct. Regardless of the way this looks by percentage, it cannot be said that it is not a reproach to the profession.
The latest report from Martindale-Hubbel, Inc., for the American Bar Association shows that more lawyers were disbarred and suspended in the United States during the year ended August 31, 1959, than in any single year since the compilation of national statistics on discipline began in 1955. The national totals for the year were 81 disbarments and 59 suspensions, as against 53 disbarments and 49 suspensions in the previous year. However, the disbarments represented only about three among every ten thousand practicing lawyers, or 0.033 per cent.
It is essential to the well-being of the profession that every lawyer square his personal and professional conduct by the precepts of the Code of Ethics. No lawyer can be a success minus the confidence of the community in which he practices. He is not entitled to succeed in a community where he has not earnestly striven over the years to acquire a reservoir of integrity and good will in the community where he lives. Fidelity to client, candor with the court, integrity and industry in all his transactions, such is the trinity of virtues that every lawyer should covet and by which he should be motivated in all his relations, public and private.
The reasons are legion why the Code of Ethical or Moral Conduct is such an important part of the lawyer's training. His client's life, liberty, property, reputation and so often the future of his family, in fact all that is near and dear to him, are placed in his lawyer's keeping. His [lawyer's] obligation to the public and his brethren at the bar is no less serious. A trust so sacred should be guarded with wisdom and discretion. Integrity and honesty, the brand that characterized Washington and Lincoln should symbolize the conduct of every member of the bar. In the recent TV quiz investigation it was demonstrated that some of the intelligentsia did not know right from wrong or swindlers from liars until the grand jury turned on the light, then they committed perjury but when preponderance of the evidence before the committee made lying look ridiculous, they broke down and told the truth.
The last person in the world that should degenerate into a potential liar, crook or fraud is the lawyer. The Code of Ethics, his obligation to the client, his profession and his country admonish him to be square. He is draped with the insignia of a great profession and he cannot afford to drag it in the dirt.
I am constrained to agree with the judgment of disbarment.
DREW, Justice, concurring specially:
The principal contention in this case is that the judgment of disbarment is too severe. For the reasons pointed out in my special concurring opinion in State ex rel. Florida Bar v. Calhoon, Fla., 102 So.2d 604, text 609, 610, I think the judgment of disbarment is clearly warranted.