Ignacio OCAMPO, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. C–88–136.

Court of Criminal Appeals of Oklahoma.

July 27, 1989.

Gloyd McCoy, Asst. Appellate Public Defender, Norman, for appellant.

## OPINION

LUMPKIN, Judge:

The Appellant, Ignacio Ocampo, pled guilty to Assisting a Prisoner to Escape (Count I), Use of a Firearm While Committing a Felony (Count II), Unauthorized Use of a Motor Vehicle (Count III), Feloniously Pointing a Weapon (Count IV), and Grand Larceny (Count V), in Jackson County District Court, Case No. CRF–87–94, before the Honorable Joseph Watt, Associate District Judge. Appellant's motion to withdraw his guilty plea was overruled by the trial court. We affirm.

Appellant first contends the trial court failed to make an appropriate interrogation to determine whether he was competent at the time he pled guilty pursuant to the guidelines set forth in *King v. State*, 553 P.2d 529 (Okl.Cr.1976). The record reflects that the trial judge presided over the selection of the jury to try the case. Appellant was present with counsel throughout the jury selection process. At the conclusion of jury selection, defense counsel informed the court that Appellant desired to withdraw his plea of not guilty and enter a plea of guilty. The trial judge made inquiry of the Appellant and established a knowing and voluntary waiver of rights, together with a factual basis for the plea. The court then ordered a pre-sentence investigation to be completed prior to the date of sentencing. This order included a requirement to provide the court with Appellant's version of the offense, marital history, education, religion, mental health history, physical health history, prior adult and juvenile criminal records, residence, leisure time activities, military service record, employment history, family background and other matters. The trial court subsequently reviewed this pre-sentence investigation report and received testimony from Appellant prior to sentencing. At the time the plea was entered an interpreter was used to inquire of Appellant as to the waiver of rights and the factual basis, which examination was observed by the court. On the date of sentencing, however, defense counsel called Appellant to the witness stand and inquired of him in English, without the necessity of an interpreter.

This Court adopted a procedure for the trial court's acceptance of a defendant's plea of guilty in *King v. State*, 553 P.2d at 534. Since 1976 this procedure has evolved from a guideline for the trial court in the taking of a guilty plea to a mandatory checklist that must be followed in order to have a valid plea of guilty. The *King* decision is predicated upon the United States Supreme Court's decision in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), wherein it was mandated that a court must ensure that a plea of guilty is voluntarily and intelligently entered. The *Boykin* decision did not mandate a checklist approach to determining the validity of a guilty plea. Rather, the Court stated that the standard to be used in determining the voluntariness of a guilty plea should be the same standard applied in

determining the voluntariness of a waiver of counsel. It was emphasized that waiver cannot be presumed from a silent record. The Court then discussed the federal constitutional rights involved in a waiver which are also present when a plea of guilty is entered in a state criminal trial. Those rights are the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's own accusers. Each of these requirements is to be determined from the totality of the circumstances surrounding the plea and matters known by the court which are in the record.

In *State v. Durant*, 609 P.2d 792 (Okl.Cr. 1980), this Court reaffirmed the holding of *Cobbler v. State*, 521 P.2d 838 (Okl.Cr. 1974), that the judgment and sentence rendered on the plea of guilty should not be disturbed for a failure to comply with "a ritualistic formula" and stated:

> This approach is a reflection of the fact that the constitutional validity of a guilty plea is not wholly dependent upon express mention and waiver of particular rights, such as embodied in our plea guidelines, so long as the record otherwise establishes a truly voluntary and intelligent plea. 609 P.2d at 793.

The *King* guidelines must therefore be viewed and applied in light of our holding in *Durant*. We must look at the entire record to determine if the judgment and sentence rendered on the plea of guilty should be disturbed.

■ Appellant specifically argues that the trial court failed to make an appropriate determination of his competency to enter a guilty plea. If the *King* procedures are to be applied in a "ritualistic formula", as in several prior cases, certain statutory provisions and legal presumptions regarding competency will be ignored. Title 22 O.S.Supp.1983, § 1175.2(A) provides "The court, at any time, may initiate a competency determination on its own motion, without an application **if the court has a doubt as to the competency of the person.**" (Emphasis added) Title 22 O.S.Supp.1981, § 1175.4(B) presumes a defendant to be competent and requires the defendant to prove incompetency by clear and convincing evidence. The *King* requirements run contra to this presumption by requiring the court to determine if the defendant is competent through appropriate interrogation of the defendant and his counsel. A proper application of § 1175.4(B) would result in a presumption of the defendant's competency if the issue of competency is not raised by the defense or if the court does not have a doubt as to present competency. In tendering a guilty plea, defense counsel, bound by the Rules of Professional Conduct, should either raise the issue of competency, if there are articulable facts which raise a question of the present condition of the defendant prior to the tender of a plea, or be restrained from utilizing the issue of competency as a tactic to obtain a delay of the proceedings.

■ In the present case, a guilty plea was entered on the day of trial when the jury was waiting to try the case. The sentencing date was set off at the conclusion of the plea and a pre-sentence investigation was ordered. On the day of the sentencing hearing each of the parties was afforded the opportunity to present evidence concerning aggravation and mitigation of punishment. The Appellant took the stand and testified in his own behalf concerning mitigation of punishment. The court, having had the benefit of presiding at the selection of the jury, reviewing the pre-sentence investigation, and receiving evidence, set the Appellant's sentence. At the conclusion of the sentencing hearing on December 1, 1987, Appellant's attorney advised the court of the possibility of an appeal of the court's sentence. Subsequently, on December 17, 1987, a hearing was held on the Appellant's motion to withdraw his plea of guilty in each of the five (5) counts. At the hearing on the Appellant's motion to withdraw his plea of guilty, the first matter presented to the court by the Appellant was argument that the court had failed to comply with the *King* criteria and that the court had failed at the time it received the plea of guilty to make sufficient inquiry into the mental competency of the Appellant. No objections were raised at the time the plea was

taken or at the sentencing hearing, nor were comments made to the trial court regarding the lack of inquiry into *King* criteria by the defense attorney or the prosecutor at any time prior to the hearing on the motion to withdraw the pleas. This is a common scenario which raises significant ethical considerations for both the trial judge and the participating attorneys. It is not clear whether the lack of objection or comment at the time the plea is taken is an attempt to secure a continuance of the trial or if it is a failure by the participating attorneys to fulfill their duties as officers of the court if the trial judge fails to substantially comply with the *King* requirements. Both judges and attorneys are in a position of trust created by the oath of office and as a lawyer. However, the procedures in *King* seem to disregard the obligations of counsel while placing the entire burden of the plea procedure on the trial judge. Attorneys are officers of the court before having their first client and are deemed to have responsibilities as such which precede their duties to a client. See *Nix v. Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), *Thornton v. United States,* 357 A.2d 429, 437 (D.C. 1976), *Dodd v. Florida Bar,* 118 So.2d 17, 19 (Fla.1960) and *In re: Integration of Nebraska State Bar Association,* 133 Neb. 283, 289, 275 N.W. 265, 268 (1937). If a prosecutor or defense attorney has any reservation as to whether the defendant is entering a plea in compliance with *Boykin,* then they have a duty to advise the court.

A review of the circumstances surrounding the entry of Appellant's guilty plea and matters shown in the record reveals Appellant was competent to enter such a plea. A summary of facts was completed by Appellant with the aid of defense counsel and an interpreter. The trial court reviewed the summary of facts with Appellant and explained his rights to him. Appellant indicated that he understood the proceedings and pled guilty because he committed the acts charged. No challenge was made as to Appellant's competency to enter the plea. By utilizing the *King* requirements as a guideline, the trial court properly determined a valid guilty plea had been en-

tered. It was therefore discretionary with the court to allow Appellant to withdraw his guilty plea. *Darnell v. State,* 623 P.2d 617 (Okl.Cr.1981). We find no abuse of discretion.

■ Therefore, it is the opinion of this Court that trial judges should observe the *King* guidelines in establishing the totality of the circumstances surrounding the entry of the guilty plea which will provide a proper record to determine its validity. The findings of the trial court should be enunciated on the record for review to preclude any question on appeal. This same procedure is to be followed in determining the validity of a plea of nolo contendre, *See Wester v. State,* 764 P.2d 884, 886 (Okl.Cr. 1988, Opinion on Rehearing) and an Alford-type plea, *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (guilty plea entered while maintaining innocence). Accordingly, appellant's first assignment of error is denied.

■ Appellant next asserts that the trial court's acceptance of guilty pleas in each of the five (5) counts violated both the Oklahoma and Federal Constitutional prohibitions against double jeopardy. He argues that his conduct resulted in the commission of only one offense, that of assisting a prisoner to escape. Appellant urges this Court to apply the "same transaction" test to the facts of his case and vacate all but one of his punishments. The Double Jeopardy Clause of both federal and state constitutions protects against two (2) distinct abuses: 1) requiring the accused to endure a series of trials where the same offense is charged and 2) the infliction of multiple punishments for the same offense. *Johnson v. State,* 611 P.2d 1137, 1141 (Okl. Cr.1980) *cert. denied* 449 U.S. 1132, 101 S.Ct. 955, 67 L.Ed.2d 120 (1981) rehearing denied 450 U.S. 1026, 101 S.Ct. 1734, 68 L.Ed.2d 221 (1981). Stated another way, the Double Jeopardy Clause enforces two distinct policies of law that no person should be punished more than once for the same offense, and that no person should be vexed by successive prosecutions for a single crime or criminal transaction. *Weath-*

*erly v. State,* 733 P.2d 1331, 1336 (Okl.Cr. 1987).

In *Salyer v. State,* 761 P.2d 890, 893 (Okl.Cr.1988) we recognized the two distinct functions of the Double Jeopardy Clause and stated:

> Recognizing the two distinct functions of the Double Jeopardy Clause, we generally apply the 'same transaction test' when the accused is subjected to multiple trials for the same offense, and apply the 'same evidence test' when a series of acts are involved and the accused is charged with several counts in a single information, while reserving the right to elect the test which provides the necessary tool to accomplish the task before us. *Johnson,* 611 P.2d at 1142–44. *Hunnicutt [v. State,]* 755 P.2d [105,] at 110.

This Court has not adopted the "same evidence test" or the "same transaction test" exclusively, but will apply the test which most advances the interests of justice in a particular case. *Johnson v. State,* 611 P.2d at 1142.

In the present case, the Appellant was charged with five (5) crimes arising from one criminal episode. A review of the record shows that on May 18, 1987, Deputy Roberta Lee, driving her own vehicle, transported Lourdes O'Campo, Appellant's pregnant wife and a prisoner in the Jackson County jail, to the Health Department for a checkup. During the return trip to the jail, the vehicle was commandeered by a gun-wielding Appellant who eventually stole Deputy Lee's wedding ring and drove off with his wife in Lee's car. We must first determine whether this single criminal episode involves separate and distinct offenses, consisting of different elements or dissimilar proof. *Weatherly v. State,* 733 P.2d at 1336. Under the "same evidence test," the question to ask is "whether each of the offenses charged requires proof of an additional fact that is not necessary to the other." *Johnson v. State,* 611 P.2d at 1140. Offenses are distinct and separate if they are not mere means to some other ultimate objective, are not offenses included in some other offense, or are not merely different incidents or facets of some primary offense. *Weatherly v. State,* 733 P.2d at 1336–37. *Hunnicutt v. State,* 755 P.2d 105, 109 (Okl.Cr.1988).

Clearly three of the offenses, assisting a prisoner to escape (Count I), unauthorized use of a motor vehicle (Count III), and grand larceny (Count V) are separate and distinct offenses. Therefore, any claim of double jeopardy fails under the "same evidence analysis".

However, we find that prosecution for use of a firearm while committing a felony (Count II) and feloniously pointing a weapon (Count IV) does violate the prohibition against the double jeopardy. Both offenses were merely means to assist in the escape of Lourdes O'Campo, both offenses were directed toward the same victim, Deputy Lee, and both offenses require proof of similar elements pursuant to 21 O.S.1981, § 1287 and § 1289.16. Under the "same evidence" test Appellant is being punished twice for the act of using a gun to assist a prisoner to escape. Therefore, Appellant's conviction for feloniously pointing a weapon (Count IV) must be reversed with instructions to dismiss.

The judgments and sentences in Count I, assisting a prisoner to escape, Count II, use of a firearm while committing a felony, Count III, unauthorized use of a motor vehicle, and Count V, grand larceny, are herewith AFFIRMED and the judgment and sentence in Count IV, feloniously pointing a weapon, is REVERSED and REMANDED with directions to DISMISS.

LANE, V.P.J., and BRETT, J., concur.

PARKS, P.J., concurs in part/dissents in part.

PARKS, Presiding Judge, concurring in part, dissenting in part:

While I agree with the double jeopardy analysis, *Majority,* at 922–23, I cannot concur in the departure from *King v. State,* 553 P.2d 529, (Okla.Crim.App.1976). *King* mandates that prior to accepting a guilty plea from an accused, the trial judge "must first determine if the defendant is competent by appropriate interrogation of the

defendant, and his defense counsel ... regarding the defendant's past and present mental state as well as by the defendant's demeanor before the court...." *Id.* at 534. Here, absolutely no inquiry was made as to the competency of petitioner as required by *King* and, thus, the trial court abused its discretion in refusing to allow petitioner to withdraw his guilty plea. *See Wester v. State,* 764 P.2d 884, 886 (Okla. Crim.App.1988); *Smith v. State,* 757 P.2d 844, 845 (Okla.Crim.App.1988); *Love v. State,* 738 P.2d 564, 565 (Okla.Crim.App. 1987); *Burch v. State,* 738 P.2d 157, 158–59 (Okla.Crim.App.1987); *Coyle v. State,* 706 P.2d 547, 548 (Okla.Crim.App.1985).

The majority ignores existing precedent and in effect overrules the foregoing cases *sub silentio.* Requiring trial judges to make records in guilty or nolo contendere plea cases in compliance with *King* best expedites the interests of justice and promotes finality by foreclosing state and federal collateral attacks. The majority's reliance on the substantial compliance standard of *State v. Durant,* 609 P.2d 792 (Okla.Crim.App.1980), severely undermines *King.*