Roger James **BERGET**, Petitioner,

v.

**STATE of Oklahoma, Appellee.**

No. C–87–190.

Court of Criminal Appeals of Oklahoma.

Nov. 13, 1991.

Rehearing Denied Feb. 25, 1992.

Pete Gelvin, Asst. Public Defender, Oklahoma City, for petitioner.

Robert H. Henry, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

LANE, Presiding Judge:

Petitioner pled guilty to First Degree Murder (21 O.S.1981, § 701.7(B)) in Oklahoma County District Court, Case No. CRF–86–4533. As a part of the plea process, he also entered guilty pleas to four counts of Burglary in the First Degree, charged in Case Numbers CRF–86–4264, CRF–86–4475, CRF–86–4476 and CRF–86–4478 and to Possession of a Firearm After Former Conviction of a Felony, in Case No. CRF–86–1536. After a sentencing hearing in which evidence was presented as to aggravating and mitigating circumstances, Petitioner was sentenced to death for the murder, to life imprisonment for each count of burglary and to ten (10) years for possessing a firearm. Judgments and sentences were entered accordingly. Petitioner moved to withdraw his plea within ten days of the pronouncement of sentence. The request was denied. Petitioner has timely filed a petition for Writ of Certiorari regarding the validity of his plea and accompanying sentence. We have assumed jurisdiction and received a response from the State. Based on the record before us, we find that the Writ should be denied and the convictions affirmed.

During the late night hours of October 19, 1985, Petitioner and a companion, Mikell Smith, decided to steal a car so that they could go riding around. They went to an Oklahoma City supermarket where they saw Rick Patterson walking toward a car. When Patterson opened the car, Petitioner forced him, at gunpoint, to slide over to the passenger's side. Smith got into the back seat behind Patterson.

Petitioner drove the car to a deserted area of town, where the two men tied or taped Patterson's hands and mouth and then put him into the trunk of the car. Petitioner drove east on I–40 to another isolated place. When Petitioner and Smith opened the trunk, the men found that Patterson had freed his hands. They tied his hands behind his back, forced him to stand up next to a tree and then shot him. Fear-

ing that Patterson was still alive and could crawl away, another shot was fired.

At the sentencing hearing, the State introduced the pretrial statement made by Petitioner to Oklahoma City police officers. In that statement, Petitioner confessed to having been involved with the murders but claimed that Mikell Smith was the one who had done the shooting. Subsequent to his guilty plea, Petitioner testified at Mikell Smith's trial and in direct contrast to his previous statement, denied that Smith had been present at the killing. Petitioner claimed that his first statement to police was coerced[1] and that he had lied to clear his girlfriend, notwithstanding the fact that his girlfriend was not implicated in either statement.

In addition to the statements made by Petitioner, the State presented testimony that Petitioner had bragged of the murder on several occasions. Evidence concerning the burglaries to which Petitioner had pled guilty, the firearms charge and several prior convictions were presented as evidence supporting the aggravating circumstances. In an attempt to mitigate against the death penalty, Petitioner presented evidence concerning his unhappy childhood, the love he felt for his son and his ability to cope in prison.

After hearing the evidence, the trial court found the existence of four aggravating circumstances: (1) that the crime was committed for the purpose of avoiding lawful arrest and prosecution; (2) that the defendant had previously been convicted of felonies involving the use or threat of violence to the person; (3) that there exists a probability the defendant would commit criminal acts of violence which would constitute a continuing threat to society; and (4) that the murder was especially heinous, atrocious or cruel. After specifically finding that the mitigating evidence did not outweigh the aggravating factors, the

court sentenced Petitioner to death for the murder of Patterson.

### Acceptance of Plea

In his first assignment of error, Petitioner contends that the transcript of his testimony in the trial of his accomplice, Mikell Smith, was improperly offered as evidence in the second stage of the proceedings by judicial notice without his stipulation. He concludes that this collateral testimony was the only evidence which could be offered to support the existence of a factual basis for his guilty plea. On appeal, he asks this Court to accept his claim that the evidence was improperly admitted at trial and hold that without this evidence the guilty plea was unsupported by a factual basis and thus, unconstitutional. We cannot agree with Petitioner's logic.

Petitioner's argument is based wholly on his claim that the transcript from the Smith trial was entered into evidence through the process of judicial notice, recognized at 12 O.S.1981, § 2201 *et seq.* He relies on *Linscome v. State*, 584 P.2d 1349 (Okl.Cr.1978), in support of his allegation that the trial court improperly took judicial notice of the testimony without his express consent[2]. Our review of the proceedings lead us to conclude that the doctrine of judicial notice is not implicated in the present case.

■ In *Linscome*, we considered the situation where the trial court took judicial notice of evidence heard in an earlier proceeding to justify the revocation of a suspended sentence notwithstanding the fact that the subsequent conviction was not yet final. We held that principles of judicial notice will only apply to cases where three prerequisites are met:

First, the matter must be one of common knowledge (although it does not have to be universally known); second, the matter must be settled beyond a doubt—if there is any uncertainty about the matter then evidence must be taken; and third,

---

1. This argument was not urged at Petitioner's own trial or on appeal.

2. At oral argument on this case, Petitioner urged the position that the transcript from the Smith trial was produced as the result of independent investigation by the sentencing judge. We find that the record does not support this conclusion. In that Appellant did not brief this issue, we will not consider it further.

the knowledge must exist within the jurisdiction of the court.

*Id.* at 1350.

Applying these three precepts to the evidence in question in this case, it becomes clear that Petitioner's testimony in another proceeding concerning the events constituting the crimes for which he is on trial does not fit the above quoted criteria. The transcript of the sentencing bears out the fact that the court did not admit the previous testimony on the strength of judicial notice.

The testimony, which was prepared at the direction of the trial judge in the Smith case, was admitted into evidence during the testimony of one of the investigating officers, William Citty. When the State sought to have the officer testify as to the substance of Petitioner's testimony at the Smith trial, which the officer attended, the defense objected and the following discussion took place:

THE COURT: Well, Judge Said requested his court reporter to prepare a transcript of the statement of the (sic) Defendant Roger James Berget made in the case of State of Oklahoma versus Michael Patrick Smith. I have that statement here before me.

MR. ROWAN: Your Honor, I have no objection to the statement being admitted that you have before you, but I think it's improper for this witness to testify what someone else testified to last week.

THE COURT: Well, I'm inclined to agree with you there, what do you have to say about that Mr. Elliot?

   \*    \*    \*    \*    \*    \*

MR. ELLIOT: Your Honor, with defense counsels' no objection to entering the transcript, then at this point I would like to mark it State's Exhibit 2 and ask that it be introduced into evidence.

THE COURT: All right, it's a Court's exhibit. . . .

MR. ELLIOT: If I understand the Court, it will be introduced as Court's Exhibit 1 then?

THE COURT: Yes.

MR. ELLIOT: With no objection from defense counsel?

MR. ROWAN: No objection.

Transcript of Sentencing, pp. 12–13[3].

■ We find that the testimony given by Petitioner in the trial of his partner in this crime was properly admitted as evidence in the present case. There was no objection to the admission into evidence of the transcripts at the time of trial. In fact, just the opposite is true. Accordingly, Petitioner has waived his right to complain about the consequences of this evidence on appeal. *Green v. State*, 713 P.2d 1032, 1039 (Okl. Cr.1985). We have reviewed the record for fundamental error and find none. There is no error identified here.

The basic tenet of Petitioner's next proposition of error assumes that we have agreed with his assertion that the Smith trial testimony was erroneously admitted. He asserts that without this testimony, there is no factual basis for his plea, thus his conviction runs afoul of the dictates of *King v. State*, 553 P.2d 529 (Okl.Cr.1976), and *Coyle v. State*, 706 P.2d 547 (Okl.Cr. 1985). Petitioner contends that because the trial court did not request an additional statement from Petitioner at the plea hearing as to the circumstances behind the murder, the plea is invalid. We must disagree.

Unlike the average plea proceeding where a defendant enters a plea after negotiations with the State usually in return for a particular sentence, the plea in the present case was only to the first stage of a required two stage proceeding. While Petitioner admitted his guilt to the crime, he reserved the opportunity to present evidence in mitigation to the potential death penalty while forcing the State to present evidence showing the appropriateness of the sentence. In such a case, the trial court is not bound in its determination by only the events of the hearing at which the plea is entered. Although Petitioner entered a plea admitting his guilt of the crime in question, the court withheld judgment until the second stage of the trial was complete.

3. Hereinafter referred to as Sen. Tr. followed by the appropriate page number.

We have long held that the protections of *King* do not require mechanical compliance. *State v. Durant*, 609 P.2d 792, 793 (Okl.Cr.1980). Neither do we require that the trial court undertake some sort of formal ritual in order to satisfy the minimum standards of due process when accepting a guilty plea. *Ocampo v. State*, 778 P.2d 920 (Okl.Cr.1989). Instead, we will examine the entire record before us to determine whether the guilty plea was entered in a knowing and voluntary manner. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

In *Durant*, we held "that the record from which the validity of a guilty plea must be assessed is not limited to that developed at the plea proceedings." *Durant*, 609 P.2d at 793. We have held in accord with this proposition many times. *See Brennan v. State*, 766 P.2d 1385 (Okl. Cr.1988) (sentencing phase of a capital trial considered); *Reed v. State*, 589 P.2d 1086 (Okl.Cr.1979) (acceleration proceedings considered); *Feaster v. State*, 539 P.2d 401 (Okl.Cr.1975) (supplementary record made at withdrawal hearing considered). In this case, the trial court, at the time of sentencing, had available the transcripts of the preliminary examination, a pre-sentence report and the presence of the defendant, in addition to a large quantity of evidence which was presented by both Petitioner and the State. To ignore the substance of the total record in this case and claim that a factual basis was not established merely because there was no perfunctory recitation of the circumstances of Patterson's murder at the time the plea was offered, before judgment was pronounced, goes against any principals of common sense. Justice does not operate in a vacuum or within such limited parameters as Petitioner suggests.

It is important to recognize that the court's ability to consider that entire record when determining whether to accept a guilty plea is a double edged sword. Just as the record may be used to establish the factual basis, it may also indicate to the trial court that some element of the crime is lacking. In such a situation, the trial court has an obligation not to accept the plea, notwithstanding the claims of the defendant during the actual plea proceedings, and refuse to sentence the defendant on the plea.

Our examination of the evidence presented in the sentencing phase of this case, along with the events involving the plea, lead us to the conclusion that Petitioner was fully aware of the consequences of his plea at the time it was entered. The factual basis for the plea is clearly established through the introduction of Petitioner's pretrial confession to police both at the sentencing proceeding and at preliminary hearing, and in his testimony given at the Smith trial and introduced as *evidence* in the sentencing trial. Petitioner testified:

> I took him out of the front seat of the car and went ahead and wrapped a chain around his wrist, tape around his wrist, and threw him in the trunk.
>
> \* \* \* \* \* \*
>
> [I] drove the car around and turned around and I pushed Patterson out of the car. We had some words and some different things were exchanged, different motions, so I ended up shooting him in the neck twice.

Smith Testimony Transcript, pp. 3–4.[4]

When Petitioner gave a statement to Officer Citty, he explained the reason for the murder:

> **CITTY:** What did you and MIKE SMITH talk about while he was in the trunk of the car?
>
> **BERGET:** About him seeing our faces and identifying us and MIKE was saying how he wanted to prove himself to me cause he knew I was out from the joint and I'm all different now, uh, so he's ... so he decided to just go ahead and kill him.
>
> **CITTY:** Both of you decided to?
>
> **BERGET:** Yea.

State's Exhibit One, p. 4.

This evidence is enough to satisfy the requirement that a factual basis for the

---

**4.** Hereinafter cited as Smith Tr., followed by the appropriate page number.

crime was established. Certainly, the element of intent is proven through Petitioner's own statements. *VanWoundenberg v. State*, 720 P.2d 328, 333 (Okl.Cr.), *cert. denied* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986). We find no merit to Petitioner's argument that the record does not establish a factual basis for his plea.

■ Petitioner's next proposition of error concerns the adequacy of the court's inquiry into his competency during the plea proceeding. The court's questioning went this way:

> THE COURT: Are you taking any medication of any kind?
>
> THE DEFENDANT: No. Sir.
>
> THE COURT: Have you ever been treated by a doctor or confined in a hospital for a mental illness?
>
> THE DEFENDANT: No.
>
> THE COURT: Mr. Rowan and Mr. Wilson, do either of you have any reason to believe that Roger James Berget ... is not fully mentally competent and able to understand the nature, purpose and consequences of this proceeding and to assist you in presenting any defense he may have to the charge?
>
> MR. ROWAN: No, Your Honor.
>
> MR. WILSON: No, Your Honor.
>
> THE COURT: Do either of you, Mr. Rowan or Mr. Wilson, have any reason to believe that Roger James Berget was not fully mentally competent and able to appreciate and understand the nature, purpose and consequences of his acts on the date these crimes are alleged to have been committed?
>
> MR. ROWAN: No, Your Honor.
>
> MR. WILSON: No, Your Honor.

Sen. Tr. pp. 2–3.

We considered this same argument under similar circumstances in *Bromley v. State*, 757 P.2d 382, 383–84 (Okl.Cr.1988). In that case, we held:

> *King* requires the trial court to make a determination of a defendant's competency based on an "appropriate interrogation of the defendant, and his defense counsel ... regarding the defendant's past and present state as well as by the

defendant's demeanor before the court ..."

In this case, the trial court properly questioned both Petitioner and his counsel about his current and past levels of competency. All parties answered negatively as to whether there was any question about Petitioner's mental status. There is absolutely nothing in the record before us that would indicate that any of the answers given were not truthful.

Again the case of *Ocampo v. State*, 778 P.2d at 920 provides insight into our resolution of this issue. In *Ocampo*, this Court considered the ramifications of a defendant's failure to raise any specific question as to his competency to plead until after sentence had been pronounced. In the present case, Petitioner has not made any allegations which would indicate that there was any doubt as to his competency. Instead, he alleges only that not enough questions were asked on the subject by the trial court. We held in *Ocampo* that the ritual was not the important part of the process, rather the important thing was whether or not competency was demonstrated. We find that based on the record before us, along with the lack of allegations on appeal, there is no indication that Petitioner was not competent to enter a plea. The trial court's inquiry was sufficient, thus we must reject Petitioner's argument to the contrary. *Beihl v. State*, 762 P.2d 976, 977 (Okl.Cr.1988).

■ Petitioner's fourth allegation also concerns the adequacy of the plea portion of the proceedings. He claims that the record does not reveal that he was ever apprised of the elements of the crime of murder. He claims that this *potential* lack of knowledge may have lead him to plead without understanding the intent requirement involved with the charge. At the outset, we note that while we agree with the principal cited by Petitioner, that a guilty plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts", *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969), we cannot agree that

the rule of law has been breached in this case. The Tenth Circuit Court of Appeals has addressed an identical argument stemming from the denial of relief to an Oklahoma petitioner. In denying the claim, the Court held:

> The Supreme Court has clearly indicated, however, that a defendant of sufficient "intelligence and experience in the criminal justice system" may, in some circumstances, be presumed to have understood the nature of the charge even though a specific explanation is not shown on the plea record. *See Marshall [v. Lonberger]*, 459 U.S. [422] at 436–37, 103 S.Ct. [843] at 851–52 [74 L.Ed.2d 646 (1983)]; *Henderson [v. Morgan]*, 426 U.S. [637] at 647, 96 S.Ct. [2253] at 2258 [49 L.Ed.2d 108 (1976)].

*Worthen v. Meachum*, 842 F.2d 1179, 1183 (10th Cir.1988).

In further support of its decision, the court cited *United States v. Dayton*, 604 F.2d 931, 938 (5th Cir.1979), *cert. denied* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980), in which the Fifth Circuit Court rejected this same argument finding that the reading of the Information was sufficient to satisfy the requirement of understanding. The Court also relied on *Berry v. Mintzes*, 726 F.2d 1142, 1147 (6th Cir. 1984), *cert. denied* 467 U.S. 1245, 104 S.Ct. 3520, 82 L.Ed.2d 828 (1984); and *Gregory v. Solem*, 774 F.2d 309, 316 (8th Cir.1985), *cert. denied* 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 730 (1986), both of which held that when the defendant has discussed the plea with an experienced defense attorney, the law will presume that the defendant understood the nature of the charges when the defendant fails to present evidence otherwise. We find the Tenth Circuit's analysis is directly applicable to the present case.

We addressed a similar situation in *Bromley v. State*, and our holding reflects comparable conclusions. In that case, we held:

> Throughout the proceedings, appellant was represented by counsel. The record is replete with occasions during which appellant was advised by his counsel. Appellant testified that he had fully discussed the nature and consequences of entering a guilty plea with his attorney, and was satisfied with the representation of counsel.... Accordingly, we see no violation of the guidelines set forth by *King*. This assignment of error is without merit.

*Bromley*, 757 P.2d at 384. We find this holding determinative in the present case and find that no error has been identified.

■ In his next assignment of error, Petitioner contends that the Magistrate committed error by refusing to allow a witness to testify at preliminary examination after she had violated the rule of sequestration. Insofar as a guilty plea waives all previous non-jurisdictional defects, we find no need to address this concern. *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975); *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Stokes v. State*, 738 P.2d 1364 (Okl.Cr. 1987); *Darnell v. State*, 623 P.2d 617, 620 (Okl.Cr.1981).

■ Petitioner's tenth allegation of error concerns the trial court's refusal to grant his request allowing him to withdraw his guilty plea. He claims that because of the violations of *King*, his plea was not voluntary. At the outset, we note that Petitioner has not alleged that his plea was involuntary. *Estelle v. State*, 766 P.2d 1380 (Okl.Cr.1988). In fact, the documents before us indicate just the opposite. The decision to allow the withdrawal of a plea is within the sound discretion of the trial court and we will not interfere unless we find an abuse of discretion. *Hopkins v. State*, 764 P.2d 215 (Okl.Cr.1988); *Vuletich v. State*, 735 P.2d 568 (Okl.Cr.1987); *Ligon v. State*, 712 P.2d 74 (Okl.Cr.1986). Insofar as we have not identified any insufficiencies in the procedures followed, we cannot say that the trial court abused its discretion.

## Sentencing Stage

Petitioner alleges that the trial court's finding that the murder of Patterson was

particularly heinous, atrocious or cruel[5] must be invalidated in light of the Supreme Court's decision in *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). He claims that at the time of his sentencing the application of this aggravating circumstance was unconstitutionally vague and overbroad. We disagree. As we recently explained in *Foster v. State*, 779 P.2d 591 (Okl.Cr.1989), the *Cartwright* decision is applicable to only a limited number of cases where the jury was improperly instructed concerning the findings necessary to justify this aggravating circumstance. We are not faced with that situation here.

We explained the use of the HAC aggravating circumstance in great detail in *Nuckols v. State*, 805 P.2d 672 (Okl.Cr. 1991). In that case, we held:

Clearly, this [circumstance] contemplates a two-step analysis. The jury is told by the second paragraph [of the instruction] that they must first find that the "death of the victim was preceded by torture of the victim or serious physical abuse." This threshold determination, established by us in *Stouffer v. State*, 742 P.2d 562 (Okl.Cr.1987), is a constitutionally approved manner of limiting the application of the HAC circumstance to only a specific class of crimes. *See Foster*, 779 P.2d at 593; *Fox v. State*, 779 P.2d 562, 576 (Okl.Cr.1989). We have consistently applied this test to properly narrow the class of defendants to which this aggravating circumstance can be applied....

Once this foundational assessment is made, then the jury may apply the definitions given to them in the first paragraph of the instruction to measure whether or not the crime can be considered to have been heinous, atrocious or cruel. The individual criteria set out in the first paragraph, once their application is limited to a narrow class of crimes, are constitutionally valid. *Profitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). (Some citations omitted.)

This interpretation satisfies the dictates of the Supreme Court. *See Walton v. Arizona*, 497 U.S. ——, 110 S.Ct. 3047, 111 L.Ed.2d 511, 528 (1990).

■ Applying this test to the present case, we find the circumstance to be supported by the evidence. While we have refused to find serious physical abuse in cases where the victim was killed by a single gunshot wound, *Stouffer v. State*, 738 P.2d 1349 (Okl.Cr.1987), *on rehearing* 742 P.2d 562 (Okl.Cr.1987) *cert. denied* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988), that does not preclude a finding of torture in this case. Torture in the context of the HAC aggravating circumstances may take any of several forms. Torture may include the infliction of either great physical anguish or extreme mental cruelty.

When used to define a class of defendants against whom the death penalty is sought, torture creating extreme mental distress must be the result of intentional acts by the defendant. The torture must produce mental anguish in addition to that which of necessity accompanies the underlying killing. Analysis must focus on the acts of the defendant toward the victim and the level of tension created. The length of time which the victim suffers mental anguish is irrelevant.

■ In the present case, we find that the facts and circumstances of the murder charged against Petitioner clearly support a finding of torture. Petitioner forced Patterson into a car at gunpoint and then drove around for some time. There was conversation in the car between Petitioner and Smith as to where to go. They drove to a deserted area and bound and gagged Patterson. After putting him in the trunk, they continued to drive. At a second isolated location, Patterson was removed from the trunk and his wrists were tied a second time. He was made to stand in front of a tree with his back to his kidnappers before he was killed. We find that the acts of Petitioner, all clearly intentional, resulted in extreme mental torture to the victim of

---

**5.** Hereinafter referred to as HAC.

his crime. *See also Mann v. State*, 749 P.2d 1151 (Okl.Cr.1988).

With the determination that the murder involved torture satisfied, we move to the second step of our analysis, whether the murder was especially heinous, atrocious or cruel. We held in *Nuckols*, 805 P.2d at 676:

> Our inquiry now turns to whether or not the murder was heinous, atrocious or cruel. In our original opinion, we held that the facts indicated that the commission of this crime was "shockingly pitiless." *Nuckols [v. State]*, 690 P.2d [463] at 473 [ (Okl.Cr.1984) ]. Our opinion of the extraordinary senselessness of this crime has not changed. Appellant went hunting for a person to kill, found such a victim and then killed him. It is difficult to conceive of a more "pitiless" crime. There was no provocation by the victim who was killed purely for the enjoyment of the murderers. This is sufficient to meet the criteria discussed above. *Fisher v. State*, 736 P.2d 1003, 1010 (Okl.Cr. 1987) (savage attack with no provocation by the victim); *Smith v. State*, 727 P.2d 1366 (Okl.Cr.1986) (killer laughed while kicking her victim).

We find the same rational to be applicable in this case. Patterson was killed merely because Petitioner wanted to drive his car. After killing Patterson, Petitioner drove to a convenience store, robbed it, then set Patterson's car on fire in an attempt to cover up his crimes. This murder was heinous, atrocious and cruel.

Petitioner urges us to find that the aggravating circumstance "that the murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution" is not supported by the evidence. Based on the testimony quoted previously in this opinion concerning Petitioner's intent to get rid of his victim because he could identify his kidnappers, we are satisfied that the circumstance is supported by adequate evidence of intent. Petitioner, whether he did the killing or not, knew that the murder of Patterson was imminent. At a minimum, there is sufficient circumstantial evidence of Petitioner's intent to avoid

lawful arrest and prosecution by the killing of Patterson and the burning of the car, to allow us to affirm the finding of this circumstance. *Munson v. State*, 758 P.2d 324, 335 (Okl.Cr.1988).

As his eighth assignment of error, Petitioner claims that the evidence offered in support of the aggravating circumstance "the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society" was insufficient. He alleges that because he would be confined for life in prison, the term "society" must relate only to prison society and not to the community at large. He cites *Rougeau v. State*, 738 S.W.2d 651 (Tex.Crim.App.1987) as support for his position. We decline to adopt such a narrow view of the term.

When evaluating the language of a statute, we are guided by the provisions of 25 O.S.1981, § 1. That section provides:

> Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears....

We find that the language of 21 O.S. 1981, § 701.12(7) does not contain any terms which would indicate its application to only a small segment of the population. While the term could certainly encompass the prison population, it does not do so to the exclusion of all other persons. We will not read statutory language in such a narrow manner when there is no indication in the body of the statute that the term means anything less than what it seems.

As Petitioner acknowledges, the aggravating circumstance concerning the continuing threat presented by the defendant has been consistently affirmed by this Court as "clear enough that it does not need to be further defined." *Van Woundenburg v. State*, 720 P.2d 328, 337 (Okl. Cr.1986). The evidence offered in support of this circumstance indicated that Petitioner has been criminally active since he was eleven years old. Although he was only twenty-six years old at the time he killed Patterson, he served time for numerous juvenile convictions and had been incarcer-

ated as an adult in both South Dakota and Oklahoma. Evidence showed that he had been twice convicted for escape.

■■■■ The killing of Patterson in itself could be enough to justify the aggravating circumstance. *Robison v. State,* 677 P.2d 1080, 1088 (Okl.Cr.1984). The evidence indicates that Patterson was kidnapped, tortured and killed solely to facilitate Petitioner's robbery of a convenience store. Although the State introduced evidence that Petitioner had been involved in the commission of many, many crimes, including a number of burglaries subsequent to his most recent release from incarceration, our review for purposes of sustaining this aggravating circumstance, must focus on only those crimes which indicate the likelihood of future violence. We find that evidence that Petitioner had been previously convicted of Robbery with Firearms in Oklahoma and of First Degree Robbery in South Dakota amply satisfies the State's evidentiary requirements. Likewise, evidence that Appellant had implicated himself as the perpetrator of another homicide supports the trial court's finding that Petitioner would continue to present the threat of future violence.

In his next proposition of error, Petitioner quotes a comment made by the trial court and argues that the comment indicates that the court was unaware of its sentencing options. The court, in pronouncing sentence, stated:

I find I can reach no other conclusion but that the aggravating circumstance outweigh the mitigating circumstances in this case.

Petitioner urges us to find that this expression was not a statement of the court's finding, but an indication that the court did not understand that it had the option of finding otherwise. We cannot adopt such a strained interpretation of this comment.

Unlike the situation in *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), we are not faced with a case where the trial court refused to consider mitigating evidence as a matter of law. In this case, the comment, when taken in context, reveals that the statement was made in connection with the court's finding of law and not as an expression of ignorance:

I have considered all of the evidence presented by the Defendant in this case by way of mitigation and as Mr. Rowan pointed out, this is not merely an accounting, it is a weighing proposition here. I find that I can reach no other conclusion but that the aggravating circumstances outweigh the mitigating circumstances in this case.

■■■■ Unless proven otherwise, we will assume that the trial court understood the penalty procedures involved with capital sentencing. The trial judge was an experienced jurist with previous experience in capital cases. The United States Supreme Court recently held in *Walton,* 497 U.S. at ——, 110 S.Ct. at 3057, 111 L.Ed.2d at 528, that when a judge is responsible for sentencing, it may be presumed that he or she follows the law, including any limiting constructs which the state appellate courts have placed on a particular statute. We have no reason to believe that the court was unaware of the law which controlled his sentencing options. *See Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990) (Court held there must be a reasonable likelihood that the sentencer could misinterpret its instructions). Clearly the court was aware of its duty to weigh the aggravating factors against the mitigating evidence. The process was undertaken properly and the trial court found the death sentence to be appropriate. We have not been presented with a reason to find otherwise.

As part of the sentencing process, the trial court had before it a presentence report which was ordered at the specific request of Petitioner. In the process of compiling the report, the Corrections officer in charge of the case spoke to Petitioner. Petitioner told the officer his version of the facts, which was consistent with his testimony at the Smith trial. He also admitted to the commission of many other crimes. He now complains that the statements contained in the presentence report were in contravention of his rights under *Miranda*

*v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that consideration of the report by the trial court was in direct conflict with the Supreme Court decision of *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). We do not find this to be the case.

In *Estelle*, the Court was concerned with the ramifications of statements made by a criminal defendant during a court ordered psychiatric examination. It held:

A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding.

*Id.* at 468, 101 S.Ct. at 1876. The Court specifically noted that this holding would not apply to a case where the defendant initiated the examination or sought to introduce the evidence himself.

■■■ We find that to be that case here. The presentence report was requested by Petitioner. He signed the Summary of Facts indicating that he wanted the trial court to review that report prior to sentencing. He did not object to the report at any time prior to this appeal. Any error which may have occurred was waived through Petitioner's request for the report and subsequent failure to object prior to the trial court's review of the document. *Thompson v. State*, 724 P.2d 780, 785 (Okl.Cr. 1986).

■■■ The next proposition of error alleges that constitutional error must be presumed because the aggravating circumstances found against Petitioner are "duplicitous." Petitioner contends that the aggravating circumstances concerning the continuing threat presented to society and that involving the previous conviction of a felony involving force or violence are essentially the same and rely on the same evidence.

In *Green v. State*, 713 P.2d 1032 (Okl.Cr. 1985), this Court examined the identical question of "whether it was error to permit the jury to consider, as aggravating circumstances, that [t]he murder was committed by a person while serving a sentence of imprisonment on conviction of a felony and that 'the defendant was previously convicted of a felony involving the use or threat of violence to the person.'" We held that these were two separate circumstances and merely because the same evidence supports both does not mean they overlap. We rejected the "overlap" argument and adopted the view stated by the Florida Supreme Court in *Delap v. State*, 440 So.2d 1242 (Fla.1983):

[T]he aggravating factors of being under sentence of imprisonment and being previously convicted of a felony involving violence do not cover the same aspect of the defendant's criminal history. The defendant could be under sentence of imprisonment without having been convicted of a felony involving violence. Also, a defendant could be convicted of a felony involving violence without being under a sentence of imprisonment. These aggravating circumstances are separate, and including the two factors in the weighing process does not constitute a doubling of the aggravating circumstances.

In *Green*, we did not consider what evidence could be used to prove an aggravating circumstance, but merely whether the two circumstances were, for weighing purposes, the same concept. In this case, Petitioner also alleges that the same evidence was used to prove the two aggravating circumstances. Merely because the same evidence is used, albeit in different manners, (the facts of the crime in one instance and the judgment and sentence in the other) involving the same prior crimes in support of both aggravating circumstances, does not make the two into one aggravating circumstance.

The United States Supreme Court held in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) that "prediction of future criminal conduct is an essential element in many of the decisions rendered throughout our criminal justice system." The Court held that it was essential that "the jury have before it all possible relevant information about the individual defendant whose fate it must consider."

In *VanWoundenberg*, 720 P.2d at 328, this Court cited the language from *Jurek* in response to a challenge to the aggravating circumstance involving the presence of a continuing threat to society. In rejecting the argument of the appellant, the Court held that:

> In considering this aggravating circumstance [that the Defendant presents a continuing threat to society], the State may present any relevant evidence, in conformance with the rules of evidence, which would show the "existence of a probability that defendant would commit criminal acts of violence that would constitute a continuing threat to society...."

*Id.* at 337.

In the present case, the two aggravating circumstances are clearly individual, calling for unique determinations on the part of the jury. In one instance, the sentencer is called upon to evaluate evidence, the judgments and sentences, which indicate the defendant's prior history of criminal activity. In the second instance, the court must look at evidence, including the circumstances of the defendant's prior crimes, in order to determine the likelihood of a defendant's future violent criminal activity. Based on this distinction, we find that no error was committed when the trial judge considered Petitioner's prior criminal history in relation to two aggravating circumstances.

In addition to evidence of crimes for which Petitioner had been previously convicted, evidence of several unadjudicated crimes was offered in support of the continuing threat aggravating circumstance. Petitioner concedes that we have previously approved the same use of such evidence in *Johnson v. State*, 665 P.2d 815, 821 (Okl.Cr.1983). We have reaffirmed this ruling in *Johnson v. State*, 731 P.2d 993, 1003 (Okl.Cr.1987); *Walker v. State*, 723 P.2d 273, 285 (Okl.Cr.1987); and *VanWoundenberg*, 720 P.2d at 337. Although he urges us to reconsider our ruling, he offers no logical reason in support. Accordingly, we see no reason to reconsider.

As his final allegation, Petitioner urges that the failure of this Court to conduct proportionality reviews is in contravention of the United States Constitution. No authority or facts are offered to support this contention other than the bare assertion that there are many death row inmates from Oklahoma County. That alone is not surprising in that Oklahoma County is the largest county in our state. There is no constitutional or statutory right to a proportionality review, thus there is no error in our current appellate procedures. *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Foster v. State*, 714 P.2d 1031 (Okl.Cr.1986). Without a substantive factual basis for the complaint, we will not find constitutional error has occurred.

### Mandatory Sentence Review

Pursuant to 21 O.S.Supp.1987, § 701.13(C) we must review all sentences of death to determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; and (2) whether the evidence supports the finding of the statutory aggravating circumstances enumerated in 21 O.S.1981, § 701.12.

As we have discussed in the course of addressing the propositions raised by Petitioner, the evidence supports the trial court's finding of four (4) statutory aggravating circumstances: (1) that the crime was committed for the purpose of avoiding lawful arrest and prosecution; (2) that the defendant had previously been convicted of felonies involving the use or threat of violence to the person; (3) that there exists a probability the defendant would commit criminal acts of violence which would constitute a continuing threat to society; and (4) that the murder was especially heinous, atrocious and cruel.

After thoroughly reviewing the entire record we conclude the sentence of death was supported by the evidence and it was not imposed under the influence of passion, prejudice or any other arbitrary factor. Accordingly, we must conclude that the trial court did not commit error when it

refused to allow Petitioner to withdraw his plea of guilty. Judgment and Sentence is AFFIRMED.

BRETT and JOHNSON, JJ., concur.

PARKS, J., specially concurs.

LUMPKIN, V.P.J., concurs in result.

PARKS, Judge, specially concurring:

This Court established guidelines for the taking of guilty pleas in *King v. State*, 553 P.2d 529 (Okl.Cr.1976). It continues to be the opinion of this writer that these directives should be followed step by step whenever a plea of guilty or nolo contendere is entered. If they were, most of the questions concerning reliability of these pleas would be eliminated. As I noted in my separate opinion in *Ocampo v. State*, 778 P.2d 920, 925 (Okl.Cr.1989), compliance with *King* "best expedites the interests of justice and promotes finality by foreclosing state and federal collateral attacks." As a matter of *stare decisis*, I am bound to apply the "substantial compliance" standard set forth in *Ocampo*. Notwithstanding, I find that the trial court in the present case properly followed the dictates of *King* by interrogating petitioner and defense counsel regarding petitioner's past and present mental state, as well as by observing petitioner's demeanor before the court. *King*, 553 P.2d at 534.

With respect to the "continuing threat" aggravating circumstance, I agree with appellant that more definitive guidance is needed. *See Boltz v. State*, 806 P.2d 1117, 1126–27 (Okl.Cr.1991) (Parks, P.J., specially concurring). I also agree that "[t]he term 'society' must ... be interpreted to encompass prison society if [21 O.S.1981,] § 701.-12(7) is to be evaluated in a non-arbitrary manner." *Id.* at 1127. *See also Rougeau v. State*, 738 S.W.2d 651, 660 (Tex.Cr.App. 1987) ("the 'society' that would exist for the defendant ... would be the 'society' that is within the Department of Corrections"). As a matter of *stare decisis*, however, I must yield my view to that of the majority of this Court, which has held that this aggravating circumstance is specific,

not vague, and readily understandable. *See Boltz*, 806 P.2d at 1117.

Finally, I reiterate my opinion that the "especially heinous, atrocious or cruel" aggravating circumstance is unconstitutionally vague both on its face and as applied. *See Foster v. State*, 779 P.2d 591, 594 (Okl. Cr.1989) (Parks, P.J., specially concurring). However, I yield to the "torture or serious abuse" standard adopted in *Stouffer* as a matter of *stare decisis*. Applying this standard to the present case, I agree that the evidence presented concerning the instant murder satisfied this circumstance.

LUMPKIN, Vice Presiding Judge, concurring in results.

I concur in the results reached by the Court in this case, however, I continue to disagree with the Court's analysis of OUJI–CR436. *See Nuckols v. State*, 805 P.2d 672 (Okl.Cr.1991) (Lumpkin, J., Concur in Results). In addition, I continue in the belief that it is inappropriate to utilize an acronym to deal with the serious nature of an aggravating circumstance.

Upon an independent review of the record, I also find that, even if the aggravating circumstance of heinous, atrocious or cruel was not supported by the evidence, a reweighing of the remaining aggravating circumstances would affirm the death penalty in this case.