# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J.  Fisher, Jr.                                                Elisabeth A. Shumaker
Clerk                                                                    Chief Deputy Clerk


September 10, 1999


**TO:**   ALL RECIPIENTS OF THE ORDER AND JUDGMENT

**RE:**   98-6381, *Berget v. Gibson*
          Filed on August 5, 1999

The decision contains a clerical error on page 22,  line 11.  The order and judgment incorrectly cited ***United States v. Foster***, --- F.3d ---, ---, 1999 WL 459259, at *8 (10th Cir. 1999) (listing cases).  The correct citation is   ***Foster v. Ward***, --- F.3d ---, ---, 1999 WL 459259, at *8 (10th Cir. 1999) (listing cases).

Please make the correction to your copy of the order and judgment.

Sincerely,

Patrick Fisher, Clerk of Court


By:   Keith Nelson
      Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 5 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROGER JAMES BERGET,

      Petitioner-Appellant,

v.

GARY E. GIBSON, Warden of the
Oklahoma State Penitentiary,

      Respondent-Appellee.

No. 98-6381
(D.C. No. CIV-96-1041-T)
(Western District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **ANDERSON**, and **TACHA**, Circuit Judges.

      Roger James Berget (Petitioner) appeals from the district court's denial of his

federal habeas petition.  Berget, a state prisoner, pleaded guilty to first-degree murder,

among other crimes, and the matter of sentencing was determined at a bench trial

resulting in a death penalty on the murder count.  Petitioner now challenges both his

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

guilty plea and his death sentence. He raises thirteen issues, none of which we find persuasive; therefore, we affirm the judgment of the district court.

## BACKGROUND

Petitioner Roger James Berget and co-defendant Mikell Smith are accused of carjacking and then murdering Rick Patterson. The facts of the murder are recounted in the opinion of the Oklahoma Court of Criminal Appeals:

> During the late night hours of October 19, 1985, Petitioner and a companion, Mikell Smith, decided to steal a car so that they could go riding around. They went to an Oklahoma City supermarket where they saw Rick Patterson walking toward a car. When Patterson opened the car, Petitioner forced him, at gunpoint, to slide over to the passenger's side. Smith got into the back seat behind Patterson.
>
> Petitioner drove the car to a deserted area of town, where the two men tied or taped Patterson's hands and mouth and then put him into the trunk of the car. Petitioner drove east on I-40 to another isolated place. When Petitioner and Smith opened the trunk, the men found that Patterson had freed his hands. They tied his hands behind his back, forced him to stand up next to a tree and then shot him. Fearing that Patterson was still alive and could crawl away, another shot was fired.

*Berget v. State*, 824 P.2d 364, 367-68 (Okla. Crim. App. 1991).

Petitioner pleaded guilty to murder in the first degree, burglary in the first degree, and possession of a firearm after former conviction of a felony. The trial court held a sentencing hearing during which evidence was presented as to aggravating and mitigating circumstances. The state trial court found four aggravating circumstances: (1) the crime was committed for the purpose of avoiding lawful arrest and prosecution; (2) the

- 2 -

defendant had previously been convicted of felonies involving the use or threat of violence to the person; (3) there existed a probability the defendant would commit criminal acts of violence which would constitute a continuing threat to society; and (4) the murder was especially heinous, atrocious, or cruel. After finding the mitigating evidence did not outweigh the aggravating evidence, the trial court sentenced the Petitioner to death on the murder count. The Oklahoma Court of Criminal Appeals affirmed on direct appeal, *see **Berget v. State***, 897 P.2d 292 (Okla. Crim. App. 1991), and later affirmed the denial of his application for post-conviction relief, *see **Berget v. State***, 907 P.2d 1078 (Okla. Crim. App. 1995).

On December 20, 1996, Berget filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Oklahoma. The district court denied the petition. This timely appeal ensued. On October 6, 1998, the district court granted a certificate of appealability on all claims raised in the petition.

## STANDARDS OF REVIEW

The first issue presented in this case is whether the more stringent standards of review of the Antiterrorism and Effective Death Penalty Act (AEDPA) apply. Mr. Berget argues they should not, and the Respondent contends the contrary. Petitioner admits he filed his federal habeas petition *after* the effective date of the AEDPA but nevertheless contends application of the law to his case would be constitutionally impermissible

- 3 -

because he had completed his direct appeal *before* the effective date. The crux of his argument is that he had certain expectations when he entered the state courts on appeal. Those settled expectations "included the knowledge that Oklahoma had historically failed to honor the federal constitutional rights of persons in its courts." Indeed, Mr. Berget claims he "pursued his state remedies with the full expectation that the state court would ignore his [federal] constitutional violations and that he would then obtain de novo review of constitutional claims once he was in federal courts." Presumably, his state litigation strategy would have differed had he known about the AEDPA. This change in legal consequences is unconstitutionally retroactive under ***Landgraf v. USI Film Products***, 511 U.S. 244, 264 (1994), he claims.

This creative spin notwithstanding, we have already held to the contrary. In ***Rogers v. Gibson***, 173 F.3d 1278, 1282 n.1 (10th Cir. 1999), we stated the AEDPA standards apply to death penalty habeas petitions filed after AEDPA's effective date, regardless of when the trial of conviction occurred. That ruling forecloses the issue here, but even if it did not, we would follow the lead of the Fourth Circuit in a similar case.

In ***Mueller v. Angelone***, 1999 WL 436762 (4th Cir. June 29, 1999), the court dispatched the argument raised here by noting:

> First, petitioner contends that section 2254(d) has an impermissible retroactive effect because, under the pre-AEDPA regime, he had the obligation only to exhaust his state court remedies in order to be guaranteed independent and de novo review of his federal constitutional claims by the federal habeas court. Consequently, Mueller argues, he lacked any incentive to pursue in state court the merits adjudication of his legal claims

- 4 -

which he argues is a prerequisite to review under the new section 2254(d). The gravamen of Mueller's argument, as best we can discern from its rather elliptical presentation, is that he would have tried harder to secure an adjudication of all his non-defaulted claims had he known that the AEDPA would govern his federal petition.

This argument is meritless, and obviously so. In the first place, we find the notion absurd that, prior to the AEDPA, state court defendants and state habeas petitioners had "no incentive" to pursue adjudication on the merits of their federal constitutional claims. Especially since the state court legal determinations were subject, as petitioner argues, in many cases to de novo federal habeas review, there simply was no downside for defendants like Mueller to receiving an adjudication on the merits in state court. Petitioner would have us accept the curious premise that prisoners pre-AEDPA willingly forewent their first free bite at the apple, and for no apparent gain--except, we suppose, in order better to savor their final bite in federal court.

In any event, petitioner's claim of retroactivity fails because, whatever he perceives to have been the change in "incentives," there is no conceivable way that his litigation strategy in the state court could actually have been affected by his alleged reliance on these incentives. As petitioner recognizes, prior to the adoption of the AEDPA, as now, the federal courts were barred from reviewing claims before state remedies were exhausted, or if the claims were procedurally defaulted at the state level (absent cause and prejudice or a fundamental miscarriage of justice that would excuse the default). *Harris v. Reed*, 489 U.S. 255, 262 (1989). Therefore, in order to preserve a claim for federal review, petitioner had to present it in state court. And once a claim is presented for consideration, it is in the hands of the court, not the prisoner, whether that claim is ultimately adjudicated on the merits. Thus, whatever the incentives before or after passage of the AEDPA, petitioner simply cannot show how he would have proceeded differently with respect to his state court litigation efforts, and as a result has failed in this regard to demonstrate any retroactive effect. *See Drinkard v. Johnson*, 97 F.3d 751, 766 (5th Cir. 1996) ("[Petitioner] cannot argue credibly that he would have proceeded any differently during his state post-conviction proceedings had he known at the time of those proceedings that the federal courts would not review claims adjudicated on the merits in the state court proceedings de novo.").

. . . .

Finally, petitioner argues that the state courts that considered his claims prior to passage of the AEDPA lacked incentive to review diligently his federal claims because the courts were not aware at the time of decision of the increased deference to their legal conclusions the new 2254(d) would ultimately mandate. Like the Seventh Circuit in **Lindh**, we are unwilling, particularly in the absence of any factual support for the proposition, to assume that state courts, comforted by the prospect of independent and de novo federal review, were less than attentive pre-AEDPA to any defendant's federal constitutional claims. **Lindh**, 96 F.3d at 864. **See also Stone**, 428 U.S. at 494 n.35 ("We are unwilling to assume that there now exists a genuine lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States."). In fact, it seems at least as likely that state courts, discomfited by the certain prospect of plenary federal review, and no doubt possessed of the familiar judicial aversion to "reversal"--especially by a court with respect to which they are in no way inferior--would have been, if possible, more rather than less attentive to petitioner's federal constitutional claims. We thus conclude that petitioner has not identified any new legal consequences that, had he known of them in advance, might have in any way affected his conduct before filing his federal habeas petition, and that he has identified no retroactive effect, impermissible or otherwise, under **Landgraf**.

Accordingly, we conclude that the district court did not err in reviewing Mueller's habeas petition under the 1996 Act.

We can discern no difference between the argument addressed by the Fourth Circuit and the one raised in this case. Therefore, even were the question open to us, we would conclude, contrary to the Petitioner's assertions, AEDPA's more stringent standard of review applies here.

In reviewing a denial of a petition for a writ of habeas corpus, we are generally subject to two different modes of analysis. If the claim was not heard on the merits by the state courts, and the federal district court made its own determination in the first instance,

- 6 -

we review the district court's conclusions of law *de novo* and its findings of fact, if any, for clear error. *See Lafevers v. Gibson*, --- F.3d ---, ---, 1999 WL 394508, at *3 (10th Cir. 1999); *Hickman v. Spears*, 160 F.3d 1269, 1271 (10th Cir. 1998). But when reviewing a claim already decided by the state courts on the merits, we are bound to deny relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to, or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" if: (1) the state court decision is in square conflict with Supreme Court precedent which is controlling on law and fact or (2) if its decision rests upon an objectively unreasonable application of Supreme Court precedent to new facts. *See Lafevers*, --- F.3d at ---, 1999 WL 394508, at *3. Quite simply, the "AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal determinations." *Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997).

## DISCUSSION

**I      Were Petitioner's Fourteenth Amendment Rights Violated Because the State Court Accepted his Plea of Guilty to First-Degree Murder Without a Factual Basis for the Plea?**

Mr. Berget claims the state trial court violated his due process rights when it accepted his guilty plea to the first-degree murder charge without an adequate factual basis. Petitioner raised this claim on direct appeal. *See Berget*, 824 P.2d at 368. The federal district court addressed the claim *de novo*, agreed with the state court's resolution of the issue, and then further concluded in any event the claim was not cognizable on a federal habeas petition. We agree the issue is not justiciable.

Controlling federal case law teaches that the requirement of a factual basis for a guilty plea is not rooted in the federal Constitution; therefore, it is not redressable under 28 U.S.C. § 2254. Although the lack of a factual basis would violate Rule 11 of the Federal Rules of Criminal Procedure, Rule 11 does not apply in state court. Indeed, the necessity for a factual basis to support a guilty plea in a state court proceeding is a matter of state, not federal, law. It is for these reasons we rejected an identical claim in another habeas case nearly thirty years ago:

> Appellant further argues that the State District Court did not make any inquiry as to the underlying facts of the offenses charged. . . . In essence, he asks that we apply to the State proceedings the provision of Rule 11, F.R.Crim.P., as amended in 1966, that the Court determine that there is a factual basis for the plea before entering judgment on it. This Federal procedural provision is not binding on the State Courts, . . . and there is no constitutional mandate for it.

*Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971); *see also Sena v. Romero*, 617 F.2d 579, 581 (10th Cir. 1980) ("[Petitioner's] contention that the absence of a record

- 8 -

showing a factual basis for his plea is an independent ground for invalidating the plea, is without merit.").

Only when the defendant claims his *factual innocence* while pleading guilty, a situation not present here, have state courts been constitutionally required to establish a factual basis for a plea. ***See North Carolina v. Alford***, 400 U.S. 25, 37-39 (1970); ***Walker v. Champion***, 162 F.3d 1175, 1998 WL 712588, at *2 (10th Cir. 1998) (unpublished disposition) ("Absent a *protest of innocence* at the time a plea is entered, the magistrate judge properly concluded the trial court has no constitutional duty to establish a factual basis for his plea.") (emphasis added).[2]

Other circuits to have addressed the matter are in agreement. ***See, e.g., Meyers v. Gillis***, 93 F.3d 1147, 1151 (3d Cir. 1996) ("Put simply, the Due Process Clause of the Fourteenth Amendment to the United States Constitution does not require an on-the-record development of the factual basis before entry of the plea, and the failure of a state court to elicit a factual basis before accepting a guilty plea does not in itself provide a

---

[2] Petitioner suggests he raised his factual innocence in a response to a "Summary of Facts" form. That form asked the Petitioner: "Do you plead guilty because you did the acts charged?" Mr. Berget answered "No." Petitioner signed the form on the day the court accepted his plea, but after the actual plea hearing. Notably, when asked a similar question *during* the plea proceedings, Mr. Berget responded differently. The trial court asked, following a discussion of the murder charge, "[D]o you plead guilty because you did what you're charged with doing in each of those cases?" Mr. Berget answered "[y]es, sir." We do not think his response on the "Summary of Facts" form constitutes a claim of factual innocence. First, given his statements in open court, his written response is at best equivocal, and it hardly rises to the level of a *protest* of factual innocence. Second, his purported claim of innocence did not occur during the plea hearing.

ground for habeas corpus relief under 28 U.S.C. § 2254."); *Higgason v. Clark*, 984 F.2d 203, 207-08 (7th Cir. 1993) (stating Supreme Court precedent "does not imply that the factual-basis requirement of Fed. R. Crim. P. 11(f) and its state-law counterparts comes from the Constitution"); *Rodriguez v. Ricketts*, 777 F.2d 527, 528 (9th Cir. 1985) ("We conclude that the due process clause does not impose on a state court the duty to establish a factual basis for a guilty plea absent special circumstances."); *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984) ("[D]ue process does not mandate a factual basis inquiry by state courts."); *United States ex rel. Crosby v. Bierley*, 404 F.2d 790 (3d Cir. 1968) ("If Crosby did understand the nature and consequences of his plea of guilty, he is entitled to no relief, irrespective of the trial court's failure to conduct an inquiry into the factual basis . . . ."); *United States v. McGlocklin*, 8 F.3d 1037, 1047-48 (6th Cir. 1993) (en banc) ("This circuit has long recognized that, absent special circumstances, 'there is no constitutional requirement that a trial judge inquire into the factual basis of a plea.'").[3]

## II Did the State Trial Court Improperly Consider a Presentence Report in Determining Petitioner's Death Sentence?

---

[3] At oral argument, counsel sought to expand this appeal by arguing Petitioner's guilty plea was invalid because the trial court did not inform the Petitioner of the elements of the crimes to which he was pleading guilty. The challenge was neither raised before the federal district court nor (more importantly) briefed on appeal; therefore, it comes too late to merit our attention. *See United States v. Brown*, 164 F.3d 518, 521 n.3 (10th Cir. 1998).

Mr. Berget posits the state trial court improperly considered a presentence investigation report in determining his death sentence. The report, which was prepared at the request of Petitioner, contains information about his background as well as his version of the murder of Rick Patterson. Mr. Berget contends: (1) his Fifth Amendment self-incrimination rights were violated because the person who interviewed him and prepared the report failed to advise him of his right to remain silent; (2) his Sixth Amendment right to counsel was violated because the person who interviewed him and prepared the report failed to advise him of his right to counsel; (3) his Sixth Amendment right to confrontation was violated because he did not have adequate time to prepare and confront the evidence contained in the report; (4) the report was full of inaccurate information, thus rendering his death sentence unreliable under the Eighth Amendment; and (5) the use of the report violated his Fourteenth Amendment due process rights. The first claim was raised on direct appeal and has been exhausted; the remaining claims, however, were either raised for the first time in the federal habeas petition or in the state post-conviction proceedings where they were deemed procedurally defaulted.

In rejecting his self-incrimination argument, the Oklahoma Court of Appeals stated:

> As part of the sentencing process, the trial court had before it a presentence report which was ordered at the specific request of Petitioner. In the process of compiling the report, the Corrections officer in charge of the case spoke to Petitioner. Petitioner told the officer his version of the facts, which was consistent with his testimony at the Smith trial. He also admitted to the commission of many other crimes. He now complains that the

- 11 -

statements contained in the presentence report were in contravention of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and that consideration of the report by the trial court was in direct conflict with the Supreme Court decision of *Estelle v. Smith*, 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. .2d 359 (1981). We do not find this to be the case.

In *Estelle*, the Court was concerned with the ramifications of statements made by a criminal defendant during a court ordered psychiatric examination. It held:

> A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding.

*Id.* at 468, 101 S. Ct. at 1876. The Court specifically noted that this holding would not apply to a case where the defendant initiated the examination or sought to introduce the evidence himself.

We find that to be that case here. The presentence report was requested by Petitioner. He signed the Summary of Facts indicating that he wanted the trial court to review that report prior to sentencing. He did not object to the report at any time prior to this appeal. Any error which may have occurred was waived through Petitioner's request for the report and subsequent failure to object prior to the trial court's review of the document.

*Berget*, 824 P.2d at 375-76.

Contrary to Mr. Berget's assertions, we conclude the approach taken by the Oklahoma Court of Criminal Appeals is entirely consistent with federal law, as determined by the United States Supreme Court. We are therefore bound by its decision.

Mr. Berget's Sixth Amendment claim appears to have been raised for the first time in his federal habeas petition and, therefore, this claim is barred for failure to exhaust

state remedies. A claim that is sought in federal court on habeas corpus must first be fairly presented to the state courts, thus giving those courts the first opportunity to consider the claim. *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State [or] there is an absence of available State corrective process [or] circumstances exist that render such process ineffective to protect the rights of the applicant."). Moreover, our examination of the record has found no express waiver of the exhaustion requirement from the State. *See* 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.").

However, the State did not raise failure to exhaust; therefore, the issue has not been addressed by the Petitioner. Nonetheless, the argument on the merits presented by him is summary and not persuasive. He merely asserts:

> An equally compelling constitutional problem with the presentence investigation is that the person who interviewed [Mr. Berget] for the report failed to advise him of his "Miranda" rights. [Mr. Berget's] statements were then incorporated into the report and construed against him. That was in violation of [Mr. Berget's] Fifth Amendment right against self-incrimination, *and against his Sixth Amendment right to assistance of counsel.*

(emphasis added). We have repeatedly warned litigants that unsupported issues adverted to in a perfunctory manner and without developed argumentation are deemed waived on

appeal. *See, e.g.*, *Lafevers*, --- F.3d at ---; *United States v. Kunzman*, 54 F.3d 1522, 1534 (10th Cir. 1995). This passing and unsupported reference is no different.

Mr. Berget then transmogrifies his Sixth Amendment "argument" into a confrontation clause argument. Again, however, he fails to develop or support the point, simply stating: "The Sixth Amendment violation occurred because Roger Berget did not have a sufficient and meaningful opportunity to confront the evidence contained in the presentence report." We deem the argument waived on appeal.

Mr. Berget's Eighth Amendment claim also must be deemed waived on appeal. It appears to have been raised for the first time in the federal habeas petition, and neither the State nor the federal district court addressed it. The petitioner simply arrogates: "The use of the report was contrary to state law and, because it was full of inaccurate information, it rendered the death sentence unreliable under the Eighth Amendment." No authority is cited for this proposition.

Petitioner's due process argument is procedurally defaulted. He did not raise it on his direct appeal, and it was found to be procedurally defaulted in the state post-conviction proceedings on an independent and adequate state law ground. Therefore, there is a procedural default for purposes of federal habeas. *See Lafevers*, --- F.3d at ---, 1999 WL 394508, at *15. To overcome the procedural default, the petitioner must either demonstrate "cause and prejudice" or a "miscarriage of justice," that is, a colorable showing of factual innocence. Mr. Berget makes no attempt at the latter, and his efforts

- 14 -

to show cause and prejudice are inadequate. He simply states, with no analysis or citation to case law, that the due process claim "was not raised in the direct appeal due to the ineffective assistance of appellate counsel." We decline to accept the unstated invitation to research and develop the contention because doing so is beyond our function.[4]

### III    Did the State Violate Due Process and the Eighth Amendment When it Failed to Provide the Petitioner With Notice of "Other Evidence" it Intended to Use in Support of the Death Penalty?

Mr. Berget claims the State violated his Fourteenth Amendment due process rights when it failed to provide him with notice of other evidence offered in support of the death penalty. This claim was first raised in his state habeas where it was deemed procedurally defaulted on an independent and adequate state ground. Therefore, there is a procedural default for purposes of federal habeas. To overcome the procedural default, the Petitioner must either demonstrate "cause and prejudice" or a "miscarriage of justice." Mr. Berget makes no attempt at the latter but instead tries to demonstrate cause and prejudice via an ineffective assistance of appellate counsel claim.

To be sure, one can be denied due process of law when a "death sentence was imposed, at least in part, on the basis of information which he had *no opportunity* to deny

_____

[4] To the extent counsel believe the word limitation visited upon them by the Rules of Appellate Procedure are responsible for such summary effort, we note those limitations do not prevent at least the citation of supporting authority. The court is never persuaded by bald assertions of counsel bereft of authentication.

or explain." ***Gardner v. Florida***, 97 S. Ct. 1197, 1207 (1977) (emphasis added). But that is not the situation here. Mr. Berget does not claim the sentencing court relied upon secret information never disclosed on the record, as in ***Gardiner***. Indeed, the state's evidence was presented at a hearing at which Mr. Berget was present and had the opportunity to be heard by the state judge. The state's use of facts, previously disclosed or not, in support of the sentence aggravation did not deny him of that opportunity. Moreover, the duty vested upon a state prosecutor to make a specific disclosure of witnesses and evidence is not a requirement of federal law, but of the law of the state of Oklahoma. See Title 21, Section 701.10, Oklahoma Statutes.

In a related claim, Mr. Berget claims the State violated his Eighth Amendment rights when it failed to provide him with a pretrial notice of the same evidence. This claim is only referred to in passing. The entire argument is:

> Additionally, because the State violated its obligation to provide notice of the aggravation punishment, any confidence in the reliability of the death sentence is undermined. Accordingly, it is violative of the Eighth Amendment to the United States Constitution.

With the disclosure on the record of aggravating facts supporting the death penalty, we see no resultant infirmity in his sentence just because the state did or did not comply with the state statute mandating pretrial disclosure.

**V      Did the State Trial Court Violate the Fourteenth Amendment Due Process Clause by Relying on Unadjudicated Offenses During the Penalty Phase?**

- 16 -

Mr. Berget asks us to hold the state trial court violated his Fourteenth Amendment right to due process by relying on unadjudicated offenses during the penalty phase. We have already rejected this argument. *See Lafevers,* --- F.3d at ---, 1999 WL 394508, at *18; *Johnson v. Gibson*, 169 F.3d 1239, 1252 (10th Cir. 1999); *Williamson v. Ward*, 110 F.3d 1508, 1523 (10th Cir. 1997); *Hatch v. State of Okla.*, 58 F.3d 1447, 1465-66 (10th Cir. 1995). Despite Petitioner's extended argument seeking a contrary result here, we cannot reverse this precedent.

**VI     Is the "Continuing Threat" Aggravator Unconstitutionally Vague or Overbroad?**

In another vain effort, Petitioner claims Oklahoma's "continuing threat to society" aggravator is both unconstitutionally vague and overbroad. Our decisions in *Ross v. Ward*, 165 F.3d 793 (10th Cir. 1999), *Castro v. Ward*, 138 F.3d 810 (10th Cir. 1998), and *Nguyen v. Reynolds*, 131 F.3d 1340 (10th Cir. 1997), have previously addressed this argument and therefore require that we reject it.

**VII    Was Trial Counsel Ineffective?**

Mr. Berget next claims his trial counsel was ineffective in several respects, which we address seriatim below. Petitioner did not raise these claims until his state post-conviction proceeding resulting in a finding by the Oklahoma Court of Criminal Appeals

that they were procedurally barred.  Consequently, the State argues the claims are also procedurally barred in federal court.

In *English v. Cody*, 146 F.3d 1257, 1263 (10th Cir. 1998), we set forth a framework for determining whether the state procedural bar to an ineffective assistance of trial counsel claim was adequate for purposes of federal habeas:

> [T]he Oklahoma bar will apply in those limited cases meeting the following two conditions:  trial and appellate counsel differ; and the ineffectiveness claim can be resolved upon the trial record alone.  All other ineffectiveness claims are procedurally barred only if Oklahoma's special appellate remand rule for ineffectiveness claims is adequately and evenhandedly applied.

*Id.* at 1264.

The first element of the *English* paradigm is met in this case because the petitioner had different counsel for trial and his direct appeal.  Whether the second element is satisfied depends on the nature of the claim asserted; therefore, we address that aspect of the test on each of Mr. Berget's ineffectiveness claims.

Petitioner first claims his trial counsel had a conflict of interest.  Apparently, trial counsel had been acquainted with a man named Jim Meadows, who had allegedly been killed by Mr. Berget.  The Petitioner had not been charged with crime but was a suspect.  Trial counsel knew Jim Meadows because he had represented Meadows' stepson in an unrelated matter.

This first claim fails the second element of *English* because it cannot be resolved upon the trial record alone.  Although we could remand for a determination of whether

- 18 -

"Oklahoma's special appellate remand rule for ineffectiveness claims is adequately and evenhandedly applied," we choose to address the claim *de novo* on the merits.[5]

In **United States v. Gallegos**, 39 F.3d 276, 277-78 (10th Cir. 1994), we articulated the fundamental principles that govern claims of impermissible conflict of interest:

> The Sixth Amendment, of course, entitles a defendant in a criminal case to the effective assistance of counsel. . . . It is further clear that the right to counsel includes the "right to representation that is free from conflicts of interest."

To succeed on a claim of conflict of interest, "a defendant must show that counsel actively represented conflicting interests and that the conflict of interest adversely affected his lawyer's performance." **United States v. Cook**, 45 F.3d 388, 393 (10th Cir. 1995) (citing **Cuyler v. Sullivan**, 446 U.S. 335, 346 (1980)).

Nothing in the record supports the assertion that trial counsel's acquaintance with Jim Meadows had any impact on his representation of Mr. Berget or that there were conflicting interests actually represented by counsel. Indeed, the only proffer to the contrary is the Petitioner's inadequately supported assertion that his trial counsel and Jim Meadows were "good friends." Because Mr. Berget has failed to demonstrate either an actual conflict or adverse effect upon the level of representation, this claim must fail.

---

[5] We treat all other claims with the same deficiency that follow in a similar manner. Instead of remanding, we elect to affirm the district court's decision following a review of the merits of the claim.

Petitioner next alleges his trial counsel was ineffective for failing to request a competency evaluation. Specifically, Mr. Berget contends his attorney should have been alerted to potential mental instability affecting his competence by the fact he refused to sign a Summary of Facts form during the sentencing hearing, agreed to testify at Mikell Smith's trial and implicate himself to protect Smith, and attempted suicide after he pleaded guilty.

This contention satisfies both elements of the *English* test and is therefore procedurally barred. First, counsel at trial and on appeal differed. Second, the evidence offered in support of this claim was known to the trial court. Therefore, because the claim has been defaulted in state court on an independent and adequate state procedural ground, the Petitioner must demonstrate cause and prejudice or a fundamental miscarriage of justice to proceed with this claim. Mr. Berget attempts to do neither.[6] This claim therefore fails.

Petitioner next claims his trial counsel was ineffective for failing to discover a South Dakota psychiatric report which was prepared while Mr. Berget was in a juvenile

---

[6] To be sure, in his argument captioned "Ineffective Assistance of Appellate Counsel," Mr. Berget contends his appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel on appeal. That argument, however, is stated in very general terms, and Mr. Berget does not once address such a claim in the context of this competency evaluation claim. Therefore, we cannot find that the Petitioner has demonstrated cause and prejudice via ineffective assistance of appellate counsel. In any event, even if we were to construe his ineffectiveness claim liberally and on the merits, we would reject it for the reasons stated in Part VII of this Order and Judgment.

facility. Mr. Berget asserts the report "would have shed valuable light onto the issue of [his] upbringing." Because this claim relies on information outside the trial record, and thus fails the second element of **English**, we would normally address it on the merits. However, such an undertaking is impossible because the Petitioner failed to submit a copy of the report to the federal district court or to us. Because there is insufficient information in the record upon which to base any judgment, we reject the claim.

Mr. Berget next claims his trial counsel was ineffective during the penalty phase because he did not call enough witnesses in mitigation and did not properly prepare those witnesses who were called. He theorizes more witnesses and those who did appear, if properly coached, would have presented more evidence of his history of family abuse and abuse in juvenile homes. These claims are based on evidence from outside the trial record, requiring us to address them *de novo*.

The federal district court concluded, and we agree, that Mr. Berget has failed to show how the testimony of more witnesses would have altered the outcome of the case. The defense presented testimony from the Petitioner's father, mother, sister, a childhood friend, and the mother of his child. Each testified regarding his difficult childhood and his positive qualities as a person. More testimony in this vein would not have outweighed the State's evidence in aggravation. Petitioner had been previously convicted as an adult of robbery with firearms in Oklahoma and first-degree robbery in South Dakota. Moreover, he had recently pleaded guilty to a number of home invasion robberies where

residents were awakened and held at gunpoint. Finally, he admitted he killed Rick Patterson for the sole purpose of taking his automobile and eliminating any witnesses. It is not reasonable to assume that, given the nature and circumstances of the crime, the mitigating evidence alleged to have been improperly omitted would have altered the outcome of the case. Lastly, "[w]e have on numerous occasions determined that evidence of a troubled childhood involving physical, emotional, sexual and/or substance abuse does not outweigh evidence supporting the conviction and evidence supporting multiple aggravating circumstances; nor does evidence of low I.Q. and/or organic brain damage." *Foster v. Ward*, --- F.3d ---, ---, 1999 WL 459259, at \*8 (10th Cir. 1999) (listing cases). Mr. Berget has not shown his case is an exception. Counsel was not ineffective for choosing not to present more witnesses in mitigation.

## VIII   Was Appellate Counsel Ineffective?

Mr. Berget next claims his appellate counsel was ineffective in several respects. Specifically, the Petitioner contends his appellate counsel: (1) operated under a conflict of interest because he was employed with and had friendships with trial counsel; (2) failed to appeal his guilty pleas on first-degree burglary and possession of a firearm, which were crimes used to support the death penalty; (3) failed to raise claims of ineffective assistance of trial counsel; (4) failed to appeal the State's failure to provide notice of evidence used to support the death penalty; (5) failed to "effectively" present errors

regarding the admission of transcripts from Mikell Smith's trial; (6) failed to allege prosecutorial misconduct; and (7) failed to raise an ***Enmund*** claim, that is, argue the death penalty cannot apply because he only aided and abetted the crime.

Mr. Berget maintains there was an impermissible conflict of interest between his appellate counsel and trial counsel, such that counsel's performance on appeal was constitutionally infirm. Both appellate and trial counsel were employed by the Oklahoma County Public Defender's Office. Indeed, the Petitioner claims, the attorneys were "not only colleagues, but they are friends and regularly work together." The conflict is "obvious--[appellate counsel] failed to raise significant issues on direct appeal that likely would have given [Mr. Berget] relief" for fear of (presumably) upsetting his colleagues.

The Oklahoma Court of Criminal Appeals addressed this argument and rejected it:

> He first alleges a conflict of interest prevented presentation of the ineffective assistance of counsel claim on direct appeal because appellate and trial counsel were both employees of the Oklahoma County Public Defender's Office. In ***Moore***, 889 P.2d at 1258, n.3, we found no ineffective assistance based on the claim that trial and appellate counsel were from the same indigent defense entity. As in ***Moore***, Petitioner here presents no evidence of conflict between the trial and appellate counsel. These unsubstantiated assertions, without more, are insufficient to sustain a claim of error. We find this contention to be without merit.

***Berget***, 907 P.2d at 1086.

When reviewing a claim already decided by the state courts on the merits, we are bound to deny relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme*

- 23 -

*Court*" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (emphasis added). Mr. Berget has shown neither. First, he does not cite a single Supreme Court case that supports his contentions. Second, Mr. Berget does not challenge the state court's factual findings. Having been given no reason to question the state court's adjudication, we must reject this first claim.[7]

Mr. Berget next claims his appellate counsel was ineffective for failing to appeal his guilty pleas on first-degree burglary and possession of a firearm. Those crimes were used to support aggravating circumstances in the penalty phase and, thus, the Petitioner would like to have them expunged and the matter remanded. This claim was also addressed on the merits by the Oklahoma courts:

> Included in [his] "laundry list" of errors is the claim that appellate counsel failed to appeal Petitioner's four burglary and firearm possession convictions. Petitioner now claims that appellate counsel did not raise issues or make arguments regarding the five non-capital cases which would have warranted reversal of these convictions. However, Petitioner does not now present those alleged arguments warranting consideration or reversal. We find this argument unpersuasive, especially in light of our determination in Petitioner's direct appeal that the pleas to the non-capital offenses were knowingly and voluntarily entered. ***Berget***, 824 P.2d at 371.

***Berget***, 907 P.2d at 1086.

---

[7] We further note in passing that Mr. Berget calls this claim an "apparent conflict of interest," something not redressable by the case law. The Supreme Court requires an actual conflict of interest. ***See Cuyler v. Sullivan***, 446 U.S. 335, 346 (1980).

Petitioner's attempts to attack the Oklahoma court's judgment fall short. He merely incorporates by reference over 44 pages of argument raised in the district court. This is something he may not do. ***See Listenbee v. Apfel***, 173 F.3d 863, 1999 WL 149748, at *1 n.1 (10th Cir. 1999) (unpublished disposition) ("Federal Rule of Appellate Procedure 28(a)(9)(A) requires that an appellant's argument contain her 'contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.' The rule makes no provision for incorporation by reference of arguments made in the district court."); ***United States v. Gabriele***, 106 F.3d 414, 1998 WL 31543, at *1 n.1 (10th Cir. 1997) (same); ***Lyons v. Jefferson Bank & Trust***, 994 F.2d 716, 721 (10th Cir. 1993) ("[V]ague, arguable references to [a] point in the district court proceedings do not preserve the issue on appeal."); ***Graphic Controls Corp. v. Utah Med. Prods., Inc.***, 149 F.3d 1382, 1385 (Fed. Cir. 1998) (construing substantially similar Fed. R. App. P. 28(a)(6) to prohibit incorporation by reference). To permit otherwise would effectively eliminate our page-limit rules. In sum, this claim, which goes unsupported by adequate argument, must be rejected.

Mr. Berget posits in very general terms that his appellate counsel was ineffective for failing to raise claims of ineffective assistance of trial counsel. His arguments here simply reincorporate the claims of ineffective assistance of trial counsel, which we have already rejected.

Petitioner further claims his counsel was ineffective for not appealing the State's

failure to provide notice of "other evidence" used to support the death penalty. The

Oklahoma Court of Criminal Appeals rejected the claim, stating:

> Petitioner next claims error alleging appellate counsel did not appeal the
> State's failure to give notice of the evidence used in support of the
> aggravating circumstances. Even were we to consider this proposition,
> which Petitioner has waived by failing to raise it on direct appeal, and even
> if we determined that the evidence used should have been excluded with
> respect to the continuing threat and previous felony convictions involving
> use or threat of violence, there were two additional aggravators found here,
> sufficient to support imposition of the death penalty. We find the claim is
> waived and there is no error here.

*Berget*, 907 P.2d at 1086-87. The petitioner has presented no argument to suggest the

contrary.

Petitioner next claims his counsel failed on appeal to "effectively" present errors

regarding the admission of transcripts from Mikell Smith's trial. Mr. Berget testified

during Smith's trial, where he implicated himself in the murder of Rick Patterson. The

state trial court admitted a transcript of that testimony in Mr. Berget's proceedings. The

Petitioner claims the court erred by taking judicial notice of the evidence and that the court

was biased because it actively sought such testimony.

Both arguments were addressed by the Oklahoma Court of Appeals:

> In his first assignment, Petitioner contends that the transcript of his
> testimony in the trial of his accomplice, Mikell Smith, was improperly
> offered as evidence in the second stage of the proceedings by judicial notice
> without his stipulation. He concludes that this collateral testimony was the
> only evidence which could be offered to support the existence of a factual
> basis for his guilty plea. On appeal, he asks this Court to accept his claim

that the evidence was improperly admitted at trial and hold that without this evidence the guilty plea was unsupported by a factual basis and thus, unconstitutional.  We cannot agree with Petitioner's logic.

Petitioner's argument is based wholly on his claim that the transcript from the Smith trial was entered into evidence through the process of judicial notice, recognized at 12 O.S.1981, § 2201 et seq.  He relies on **Linscome v. State**, 584 P.2d 1349 (Okl. Cr. 1978), in support of his allegation that the trial court improperly took judicial notice of the testimony without his express consent.[8]  Our review of the proceedings lead us to conclude that the doctrine of judicial notice is not implicated in the present case.

*Id.* at 1350.

The transcript of the sentencing bears out the fact that the court did not admit the previous testimony on the strength of judicial notice.
. . . .

We find that the testimony given by Petitioner in the trial of his partner in this crime was properly admitted as evidence in the present case.  There was no objection to the admission into evidence of the transcripts at the time of trial.  In fact, just the opposite is true.  Accordingly, Petitioner has waived his right to complain about the consequences of this evidence on appeal.  **Green v. State**, 713 P.2d 1032, 1039 (Okl. Cr. 1985).  We have reviewed the record for fundamental error and find none.  There is no error identified here.

**Berget**, 824 P.2d  at 368-69.

Mr. Berget offers no argument to suggest the Oklahoma court's decision is contrary

to Supreme Court precedent.  Therefore, the claim must fail.

---

[8] "At oral argument on this case, Petitioner urged the position that the transcript from the Smith trial was produced as the result of independent investigation by the sentencing judge.  We find that the record does not support this conclusion.  In that Appellant did not brief this issue, we will not consider it further."

Next, the petitioner argues his counsel was ineffective for failing to raise on appeal prosecutorial misconduct. Specifically, he contends the prosecutors made several inappropriate comments during the sentencing proceeding, including: (1) arguing Mr. Berget was in control of Mikell Smith, "when they knew or should have known the evidence is to the contrary"; (2) improperly arguing about the victim's state of mind to prove the crime was heinous, atrocious and cruel; (3) improperly arguing about the state of mind of Mr. Berget and Mikell Smith; and (4) improperly arguing about the impact the crime had on the victim's family.

Once again, the Oklahoma courts considered and rejected the claim:

> Petitioner's claim of failure to raise prosecutorial misconduct is inapposite here because, as noted by Petitioner, this was not a jury trial. Additionally, the argument was waived when it was not raised on direct appeal. More importantly, Petitioner shows no prejudice indicating that the result of the sentencing would have been different if the statements had not been made. We will not modify or reverse a sentence or a conviction unless we find not only error, but some prejudicial effect resulting from that error. *Elmore v. State*, 846 P.2d 1120, 1123 (Okl. Cr. 1993); *Crawford v. State*, 840 P.2d 627, 634 (Okl. Cr. 1992); *Gates v. State*, 754 P.2d 882 (Okl. Cr. 1988); *Hall v. State*, 762 P.2d 264 (Okl. Cr. 1988); *Harrall v. State*, 674 P.2d 581, 584 (Okl. Cr. 1984). We find this argument to be meritless.

*Berget*, 907 P.2d at 1087.

To persuade us to consider this issue, Petitioner offers no argument based on Supreme Court precedent, or any other federal case law for that matter, to show that such comments are improper and violate the United States Constitution. Therefore, we must reject this claim.

- 28 -

In his last claim of ineffectiveness, Mr. Berget argues his appellate counsel should have raised an ***Enmund v. Florida***, 458 U.S. 782, 787-88 (1982), claim that the death penalty cannot apply to him because he only aided and abetted the crime. In ***Enmund***, the Supreme Court held imposition of the death penalty was improper for a person who aids and abets a felony but does not personally kill, attempt to kill, or intend that a killing result. Petitioner argues his counsel erred by failing to assert this claim because there is "no evidence whatsoever that Roger Berget attempted to kill the victim, or that he was the triggerman [and] there is scant evidence that [Mr. Berget] intended for someone to be killed or that he acted with reckless indifference to Smith's conduct."

The Oklahoma courts rejected the claim, stating:

> Petitioner next claims appellate counsel erred in failing to raise an ***Enmund*** claim. We determined on direct appeal that Petitioner admitted killing Patterson both in his statements to police and in the Bulldog Smith trial testimony (***Berget***, 824 P.2d at 370-371) and that there was more than sufficient evidence of Petitioner's intent to avoid arrest and prosecution by killing Patterson. Had Petitioner not waived this claim on direct appeal (and we find that he has), we would still find no error, having previously determined there was sufficient evidence of his participation in Patterson's death.

***Berget***, 907 P.2d at 1087.

Mr. Berget's arguments to the contrary consist of nothing more than unsupported assertions. His claims that "no evidence" and "scant evidence" existed fail to adequately address and counter the state court's factual findings. Mr. Berget must demonstrate the state court's conclusion "was based on an unreasonable determination of the facts in light

of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This he

has not done, and we must thus reject this contention.

## IX     Were There Cumulative Errors That Resulted in an Unfair Trial?

Petitioner asserts the accumulation of all the errors committed in his case entitles

him to habeas relief. Because we have noticed no errors in the proceedings, there can be

no cumulative error. "Cumulative error analysis applies where there are two or more

actual errors; it does not apply to the cumulative effect of non-errors." *Moore v.*

*Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998).

## X     Was Petitioner Entitled to an Evidentiary Hearing?

Finally, Mr. Berget argues the federal district court erred in denying him an

evidentiary hearing on his claims. In *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir.

1998), we held that the AEDPA's restriction on evidentiary hearings does not apply where

a habeas petitioner has "diligently sought to develop the factual basis underlying his

habeas petition, but a state court has prevented him from doing so." Mr. Berget claims his

case falls within this exception and AEDPA does not apply. Even were it true that

Petitioner was prevented from developing his claims in state court, he is still not entitled to

a federal evidentiary hearing under the pre-AEDPA standard. His allegations, taken as

true, still would not entitle him to habeas relief. *See id.* at 1253.

**CONCLUSION**

Finding no reversible error, we **AFFIRM** the judgment of the district court.


ENTERED FOR THE COURT


John C. Porfilio
Circuit Judge