OSCN Found Document:MITCHELL v. STATE OF OKLAHOMA

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

MITCHELL v. STATE OF OKLAHOMA2025 OK CR 20Case Number: C-2024-509Decided: 10/23/2025Mandate Issued: 10/23/2025THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA
Cite as: 2025 OK CR 20, __ P.3d __

CHRISTOPHER MITCHELL, Petitioner,
v.
STATE OF OKLAHOMA, Respondent.

OPINION GRANTING CERTIORARI

HUDSON, JUDGE:

¶1 On March 11, 2024, Petitioner, Christopher Mitchell, entered a blind plea of guilty in the District Court of Oklahoma County, Case No. CF-2020-145, to Counts 1, 2 and 4: Embezzlement, in violation of 21 O.S.Supp.2017 & 2018, § 1451; Count 3: Obtaining Money by False Pretenses, in violation of 21 O.S.Supp.2017, § 1541.115 O.S.2011, § 761.1

¶2 On May 16, 2024, the matter came on for sentencing. After hearing evidence and argument from both parties, Judge Stallings sentenced Mitchell to ten years imprisonment each on Counts 1, 3, 5, 7, and 9, all suspended; five years imprisonment each on Counts 2 and 4, all suspended; and ten years imprisonment on Count 8.

¶3 On May 22, 2024, less than a week later, Petitioner filed a pro se Motion to Withdraw Plea of Guilty for Cause. Petitioner asserted therein that (1) he "did not understand that he was placing hi[m] self at the mercy of the court," and (2) he received ineffective assistance of counsel which forced him to enter a blind plea. The State filed an Objection and Response to Petitioner's withdrawal motion on June 12, 2024. Defense counsel Aaron W. Easton entered an appearance on behalf of Petitioner on June 20, 2024, and filed an Amended and Supplemental Application to Withdraw Plea. In the amended application to withdraw, Petitioner claimed plea counsel, Redmond Kemether, was ineffective for: (1) failing to prepare for trial as he never intended to try the case; (2) failing to file pleadings; and (3) failing to inform Petitioner of the State's final plea offer that then lapsed.

¶4 A hearing on Petitioner's motion to withdraw was held that same day. At the conclusion of the hearing, the trial court denied Petitioner's motion to withdraw. Petitioner now seeks a writ of certiorari.

¶5 Petitioner now seeks a writ of certiorari based on the following proposition of error:

I. PETITIONER'S PLEAS WERE NOT KNOWINGLY AND VOLUNTARILY ENTERED BECAUSE HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

¶6 After thorough consideration of the entire record before us on appeal, including the original record, transcripts, and the parties' briefs, we find that relief is required under the law and evidence. Petitioner's Petition for Writ of Certiorari is GRANTED.

¶7 Petitioner complains on appeal that plea counsel's scarce handling of his case, and failure to inform him of the State's final plea offer, denied him effective assistance of counsel. He contends that plea counsel never actually intended to try his case but instead had a singular strategy--to close the matter with a plea agreement--which he "completely mismanaged." Petitioner asserts plea counsel's total mismanagement of his case culminated in counsel's failure to communicate the State's final plea offer--a fifteen-year suspended sentence and $200,000.00 restitution, due over the term of the suspended sentence--which caused the offer to lapse. As a result, Petitioner argues he "was forced to decide between proceeding to trial with unwilling and unprepared counsel, or, reluctantly, throwing himself at the mercy of the district court through a blind plea."

Analysis

¶8 "[C]riminal justice today is for the most part a system of pleas, not a system of trials." Lafler v. Cooper, 566 U.S. 156, 170 (2012). Thus, "criminal defendants require effective counsel during plea negotiations. Anything less . . . might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him." Missouri v. Frye, 566 U.S. 134, 144 (2012) (internal citations and quotations omitted). See also Lafler, 566 U.S. at 162 (finding that the Sixth Amendment right to effective assistance of counsel "extends to the plea-bargaining process."); Jimenez v. State, 2006 OK CR 43144 P.3d 903communicating with the client concerning offers to settle a case." (emphasis in the original)). When ineffectiveness during plea negotiations is alleged, an inquiry into whether a later plea was knowing and voluntary "is not the correct means by which to address the claim." Lafler, 566 U.S. at 173 (citing Hill v. Lockhart, 474 U.S. 52, 57 (1985)). Indeed, contrary to the State's argument below and on appeal, a knowing and voluntary plea provides no remedy for counsel's pre-plea failures in this regard. See Frye, 566 U.S. at 141-42 (a knowing and voluntary plea does not supersede plea counsel's errors); Lafler, 566 U.S. at 166 (finding that a subsequent fair trial is not a cure for prior insufficient assistance during plea negotiation process, but rather "the trial caused the injury from the error" when the defendant received a more severe sentence at trial); Jimenez, 2006 OK CR 43

¶9 To prevail on an ineffective assistance of counsel claim, a defendant generally must show deficient performance and resulting prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). See also Harrington v. Richter, 562 U.S. 86, 104 (2011) (discussing Strickland two-part standard). To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. To establish prejudice, a petitioner must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In the plea context, the Strickland prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59.

¶10 The United States Supreme Court in Lafler and Frye provided guidance on how to apply Strickland's two-part analysis when the alleged ineffectiveness occurs during plea negotiations. Lafler, 566 U.S. at 168. Further, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, 566 U.S. at 145. If defense counsel fails to do so and allows a formal offer to expire, "defense counsel did not render the effective assistance the Constitution requires." Frye, 566 U.S. at 145. To show Strickland prejudice from this type of deficient performance, a defendant must show a reasonable probability that: (1) he would have accepted the earlier plea offer; (2) the plea would have been entered without the prosecution canceling the offer or the trial court refusing to accept the plea; and (3) the end result would have been more favorable due to a lesser charge or a shorter sentence. Id. at 147.

¶11 Upon review, we find the trial court in this case applied the incorrect standard to resolve Petitioner's ineffective assistance of counsel claim. Notably, neither Frye nor Lafler were ever contemplated by the trial court or the parties below when addressing Petitioner's ineffective assistance of counsel claim. Strickland, the trial court simply found Petitioner's blind plea was knowing and voluntary. Applying the correct standard on appeal, we find Petitioner has satisfied Strickland's two-part test. As discussed below, Petitioner shows both deficient performance and resulting prejudice. We thus find Petitioner was denied effective assistance of counsel during plea negotiations and grant relief.

¶12 Deficient Performance. The plea offer in this case "was a formal one with a fixed expiration date." Frye, 566 U.S. at 145. Plea counsel admittedly did not timely communicate the State's final offer to Petitioner. Counsel's alleged inability to contact Petitioner because he did not have Petitioner's contact information, and his reliance on Petitioner's bondsman to do so on his behalf, did not relieve him of his ethical duty to communicate with his client. Id. See also Jimenez, 2006 OK CR 43

¶13 Plea counsel bore the duty to communicate with Petitioner, not Petitioner's bondsman. Given the circumstances presented here, Petitioner was not to blame for plea counsel's failure to communicate the plea offer. The record clearly shows that Petitioner's attorney did not make a meaningful attempt to inform him of the State's final plea offer before the offer expired. See Frye, 566 U.S. at 149. Counsel's representation "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Because of counsel's deficient performance, the offer lapsed. The question thus becomes what, if any, prejudice resulted from counsel's breach of his duty.

¶14 Prejudice. Petitioner shows Strickland prejudice from plea counsel's deficient performance. First, the record on appeal shows a reasonable probability that Petitioner would have accepted the State's final offer had plea counsel timely communicated it to him. Indeed, asked by the trial court at the pretrial hearing held on March 7, 2024, if he was "willing to take [the lapsed] deal" that day, Petitioner responded "yes," and the court said "[h]e can fill out paperwork right now." Moreover, when the State advised the offer was revoked, Petitioner implored the trial court and State to allow him to plead to the lapsed offer, assuring the court that it could meet the State's demand for $20,000.00 in restitution by the close of business that day.

¶15 Further, contrary to the State's assertion on appeal, Petitioner has demonstrated that he had the capability, i.e., access to the necessary financial resources, to accept the State's final offer. th pretrial hearing equipped with a $20,000.00 restitution payment is insufficient to show that had he timely accepted the State's final offer, he would have been unable to make the required payment. The State's offer had expired more than a month prior to the March 7th hearing. It was unreasonable to expect Petitioner to anticipate and prepare for the possibility that he might be given the opportunity to plead to the lapsed offer at that hearing.

¶16 What's more, a $20,000.00 payment at the time of plea was not a requirement of the State's final offer. The State's offer specifically required that Petitioner "must pay at least $20,000.00 in restitution prior to sentencing," not at the time of his plea. The offer provided that so long as Petitioner entered his plea on or before February 9th, the sentencing hearing could be "set . . . off to another day." Given the terms of the State's offer, Petitioner could not have reasonably anticipated the State's demands for the restitution payment at the March 7th hearing when the trial court expressed its willingness to permit Petitioner to plead to the State's final offer. That Petitioner paid $20,000.00 towards restitution following his blind plea on March 11, 2024, is proof enough that he had the financial resources to accept the State's final offer.

¶17 Second, Petitioner has demonstrated a reasonable probability that the plea would have been entered "without the prosecution canceling it or the trial court refusing to accept it." Frye, 566 U.S. at 147. That the State refused to reinstate the offer after the trial court indicated its willingness to accept the plea is immaterial. We look instead to whether the State would have kept the plea offer open until the February 2nd, 5:00 p.m. deadline. The record shows it would have. The State sent an email to plea counsel at 10:35 a.m. on February 2, 2024, the day the State's offer was set to expire at 5:00 p.m., asking if there was "any word" from Petitioner. th hearing, telling counsel that Petitioner could "fill out paperwork right now."

¶18 Third and finally, had Petitioner been afforded effective assistance of counsel, there is "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to . . . less prison time" as well as a significantly lower amount of restitution owed. Frye, 566 U.S. at 147. The State's final plea offer provided for a "15 year suspended sentence in lieu of prison time" and $200,000.00 in restitution, which included whatever amount Petitioner paid prior to sentencing, to be "paid within the 15 year term." Petitioner was instead sentenced by Judge Stallings to thirty years imprisonment--10 years to serve and 20 years suspended--and $563,378.25 in restitution.

¶19 Having shown both deficient performance and prejudice, we find Petitioner's sole proposition of error has merit and relief is warranted. The question now becomes what is the appropriate remedy in this case.

¶20 Remedy. The Supreme Court in Lafler considered that the remedy for ineffective assistance of counsel depended upon the specific circumstances of the case. 566 U.S. at 170 ("Sixth Amendment remedies should be 'tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.'" (citing United States v. Morrison, 449 U.S. 361, 364 (1981)). There is thus no one-size-fits-all remedy. Instead, courts must assess the injury to devise a remedy that will "'neutralize the taint' of [the] constitutional violation[.]" Id., 566 U.S. at 170 (internal citations omitted). Further, when determining an appropriate remedy, it is important to consider that "[t]he Sixth Amendment mandates that the State bear the risk of constitutionally deficient assistance of counsel." Kimmelman v. Morrison, 477 U.S. 365, 379 (1986).

¶21 The Lafler Court observed that the injury suffered as a result of a lapsed or declined plea offer can come in at least one of two forms. Lafler, 566 U.S. at 170. In cases where the sole advantage a defendant would have received is a lesser sentence, resentencing is often a sufficient remedy. Id. at 170-71. However, where a resentencing alone would not be enough to fully redress the constitutional injury, the proper remedy "may be to require the prosecution to reoffer the plea proposal." Id. at 171. Beyond this, Lafler provides limited guidance as to how courts should decide upon an appropriate remedy. Lafler simply tells us that courts "must weigh various factors," but it declined to delineate "the boundaries of proper discretion." Id. Lafler did, however, "note two considerations that are of relevance." Id. One, "a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions." Id. And two, the court may consider "any information concerning the crime that was discovered after the plea offer was made." Id. at 172. The Court further instructed that the "baseline"--i.e., the positions the parties occupied before the plea offer was rejected or lapsed--should be consulted when determining the appropriate remedy. Id. at 172 (observing that "[t]he time continuum makes it difficult to restore the defendant and the prosecution to the precise positions they occupied prior to the rejection of the plea offer, but that baseline can be consulted in finding a remedy that does not require the prosecution to incur the expense of conducting a new trial.").

¶22 Here, Petitioner suffered a harsher sentence as a result of defense counsel's failure to timely communicate the State's final plea offer. Under the terms of that offer, Petitioner would have been sentenced to a term of fifteen years, all suspended, and thus would not have been required to serve any time. Instead, Petitioner was sentenced to twice that amount--a total of thirty years--with ten of those years to be serve. This Court cannot turn back the clock and give Petitioner back the time he has served. Moreover, the restitution imposed by the trial court far exceeds the amount contemplated in the lapsed plea offer by $363,378.25.

¶23 We recognize there are competing interests at play in this case. On the one hand, Petitioner has suffered a constitutional injury and must be restored, as closely as possible, to the position he occupied before the State's final plea offer lapsed because of ineffective assistance. See id. at 172. Further, the record shows that Petitioner expressed a willingness to accept responsibility for his actions. During the March 7th hearing, Petitioner told the trial court that he knew he "would be eventually . . . paying restitution to make people whole" and hoped all along to "have a settlement that help[ed] everybody." On the other hand, additional information concerning Petitioner's crimes came to light at his sentencing hearing and sheds light on the financial, emotional, and psychological impact his actions had on his victims.

¶24 Having weighed these various factors and the circumstances presented in this case, we find the best way to neutralize the taint of the constitutional error Petitioner suffered is through the reinstatement of the State's January 22, 2024 plea offer. In doing so, the positions of each party will be restored as closely as possible to the positions they occupied before the plea offer lapsed. Certiorari is therefore GRANTED, and the case REMANDED to the district court with instructions to (1) allow Petitioner to withdraw his guilty plea; and (2) order the State to reinstate its January 22, 2024 plea offer for a reasonable amount of time for Petitioner's acceptance or rejection. Petitioner should also be given sufficient time to obtain legal counsel (private or appointed) and to consult with counsel prior to the expiration of the plea offer.

DECISION

¶25 The Petition for Writ of Certiorari is GRANTED. The judgments and sentences of the District Court are REVERSED, and the matter is REMANDED for proceedings consistent with this opinion. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2025), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM
THE DISTRICT COURT OF OKLAHOMA COUNTY
THE HONORABLE SUSAN STALLINGS, DISTRICT JUDGE

APPEARANCES BELOW

REDMOND KEMETHER
ATTORNEY AT LAW
500 N. WALKER, STE. 210
OKLAHOMA CITY, OK 74102
COUNSEL FOR DEFENDANT
(PLEA)
APPEARANCES ON APPEAL

AARON W. EASTON
WIRTH LAW OFFICE
101 PARK AVENUE, STE. 490
OKLAHOMA CITY, OK 73102
COUNSEL FOR PETITIONER

AARON W. EASTON
WIRTH LAW OFFICE
101 PARK AVENUE, STE. 490
OKLAHOMA CITY, OK 73102
COUNSEL FOR DEFENDANT
(MOTION TO WITHDRAW)

DANE TOWERY
BRANT ELMORE
ASST. ATTORNEYS GENERAL
313 N.E. 21ST STREET
OKLAHOMA CITY, OK 74105
COUNSEL FOR THE STATE
GENTNER F. DRUMMOND
OKLA. ATTORNEY GENERAL
S. GRACE SLAFF
ASST. ATTORNEY GENERAL
313 N.E. 21ST STREET
OKLAHOMA CITY, OK 73105
COUNSEL FOR RESPONDENT

 

OPINION BY: HUDSON, J.
LUMPKIN, P.J.: CONCUR IN PART/DISSENT IN PART
MUSSEMAN, V.P.J: CONCUR
LEWIS, J.: CONCUR
ROWLAND, J.: CONCUR

FOOTNOTES

form filed that same day shows that the trial court intended to sentence Petitioner to a 10-year suspended sentence each on Counts 6 and 10. These omissions are rendered moot by the relief granted in this case.

Lafler, the issue before the Supreme Court was how to apply the Strickland prejudice test where a plea offer was rejected based on counsel's deficient performance and the defendant was convicted after a full and fair jury trial. Lafler, 566 U.S. at 160, 163. In Frye, the Supreme Court confronted a situation where defense counsel failed to inform the defendant of a plea offer. After the plea lapsed, the defendant pleaded guilty but received a harsher sentence. Frye, 566 U.S. at 138-139.

Lafler, we find the remedial model set forth in Lafler logically applies.

 

 

LUMPKIN, PRESIDING JUDGE: CONCURRING IN PART AND DISSENTING IN PART

¶1 I completely agree with the Court's analysis of the Supreme Court directives regarding ineffective assistance of counsel in the plea process. I further agree with the finding that Petitioner's plea counsel was ineffective during that process because he failed to adequately communicate with his client. However, I disagree with the Court's remedy in this case.

¶2 The court seems to give the Petitioner more credit than he deserves. Petitioner now says the State's offer was a really good offer and he would have accepted the offer after 1) first, he learned that he was going to have to go to trial and the offer had lapsed and 2) second, after he learned the sentence the trial court was going to order. However, the rest of the record seems to confirm that the nature of this Petitioner as that of an "embezzler" or a "conman." He appears to have been manipulating his case from the beginning. He once said he took documents to support his defense to his lawyer's office but then failed to leave those documents with the lawyer. While the Court cites Petitioner's offer to pay the restitution up front, the record shows he previously made offers that never came to fruition. In other words, Petitioner did not have totally clean hands in the progression of this case.

¶3 When this Court addresses a Petition for Writ of Certiorari our primary duty is to determine if the plea was a free, intelligent and knowing act. See Boykin v. Alabama, 395 U.S. 238, 242 (1969) (finding error where trial court failed to require an "affirmative showing" that the plea was intelligent and voluntary); Ocampo v. State, 1989 OK CR 38778 P.2d 920

¶4 The Supreme Court dealt with this situation in Missouri v. Frye, 566 U.S. 134, 145 (2012) and determined that such a failure of counsel equates to deficient performance. The Court set out a test which defendants must meet in order to show prejudice in such a case, to-wit: he must "show not only a reasonable probability that he would have accepted the lapsed plea but also a reasonable probability that the prosecution would have adhered to the agreement and that it would have been accepted by the trial court." Id. at 150. The Court remanded the case to the Missouri Court of Appeals to apply the test in order to decide if the defendant in Frye had shown prejudice which would warrant withdrawal of his plea. Id. at 151.

¶5 The opinion, although it cites to Frye, relies upon the rationale found in Lafler v. Cooper, 566 U.S. 156, 166 (2012), which involved the situation where the defendant went to trial rather than accept a plea deal based upon the incorrect advice of his counsel. The defendant received a sentence after his trial and conviction which was over three times the sentence, he would have received pursuant to a guilty plea. Id. The parties conceded defense counsel deficiently performed, and the Court held that the defendant had also shown that he would have accepted the plea offer but for counsel's deficient performance. Id. at 174. On remand to the Sixth Circuit, the Court ordered the State to reoffer the original plea agreement and if the defendant accepted the offer, then the trial court could exercise its discretion "in determining whether to vacate the convictions and resentence [the defendant] pursuant to the plea agreement, to vacate only some of the convictions and resentence [the defendant] accordingly, or to leave the convictions and sentence from trial undisturbed [based on Michigan law]." Id.

¶6 As clearly shown, the defendant in Lafler rejected a plea offer from the State based upon counsel's bad advice, went to trial and was convicted and received a significantly harsher sentence than had he accepted the plea offer. Thus, application of the Lafler remedy, i.e., ordering the State to reoffer its original plea agreement, to the instant facts is not warranted.

¶7 This Court should not enter into the plea negotiation process by restricting the sentencing options available to the trial court. This Court should simply address the ineffective assistance claim presented as part of our certiorari review, applying Frye. Application of Frye to these facts shows that Petitioner is entitled to the grant of the writ of certiorari. However, Frye does not mandate the reinstatement the original plea offer, it simply requires that state law be followed once a defendant meets the Frye test. Frye, 566 U.S. at 150-51.

¶8 The court has determined that plea counsel was ineffective, and counsel's actions led to an invalid plea. Therefore, in a certiorari case where a plea has been determined to be invalid the proper remedy is to place the parties in the position they were prior to the plea. This allows the trial court to perform its function to adjudicate what is presented to it. As the Court has noted more evidence was disclosed after the plea and all parties must be treated with the respect they deserve. Petitioner should be placed back in the position he was before the acts of ineffectiveness committed by his counsel. This Court should not be involved in determining sentencing options available to the trial court. Therefore, under the facts of this case the writ should be granted thereby allowing Petitioner to obtain counsel to effectively represent him in further proceedings of this case before the trial court. This action comports with our jurisprudence as to the limited review available in certiorari proceedings, and state law.

The Oklahoma Supreme Court
2100 N. Lincoln Blvd., Suite 1
Oklahoma City, OK 73105